UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACOB REINKRAUT, STEVE SMITH, MATTHEW CHAPMAN, SARI MEDINA, JOSEPH MAGEE, JT WILLCUTT and ROBERT ZAUGG on behalf of themselves and the Putative Class,<br><br>        Plaintiffs,<br><br>        v.<br><br>FCA US LLC, a Delaware Limited Liability Company,<br><br>        Defendant. | Case No. 2:23-cv-02792-JMV-CLW<br><br><br><br>*Civil Action*<br><br>FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND |

Plaintiffs, Jacob Reinkraut, Steve Smith, Matthew Chapman, Sari Medina, Joseph Magee, JT Willcutt and Robert Zaugg by their attorneys, Nagel Rice LLP, on behalf of themselves and all others similarly situated, make the following allegations on personal knowledge and information and belief:

I.    <u>NATURE OF THE ACTION</u>

1.    Plaintiffs bring this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals and entities (the "Class") who own, lease or have owned or have leased Jeep Wranglers and Gladiators for model years 2016 to the present (hereinafter, the "Class Vehicles") manufactured and/or sold by

1

the Defendant, FCA US LLC (hereinafter "Defendant" or "FCA"). FCA designs, manufactures, and warrants the Class Vehicles, and advertises the Class Vehicles as safe, dependable, and durable vehicles.

2.     However, the Class Vehicles are designed and manufactured with one or more manufacturing and design defects that makes the windshields on these vehicles extremely prone to cracking, fracturing, or chipping (herein the "Windshield Defect").

3.     The Windshield Defect causes Class Vehicles front windshield to crack, fracture or chip for no reason, or under circumstances that would not cause a normal, non-defective windshield to become impaired and fail, such as during use of the defroster or having a small pebble from the road bounce up onto the windshield.

4.     This Windshield Defect presents an unreasonable safety hazard due to the impact on the driver's visibility, as well the Class Vehicles' structural integrity, and greatly increases the potential for injury to drivers and passengers.

5.     Defendant knew or should have known before the time it sold the first Class Vehicle, that the Class Vehicles contained the Windshield Defect. Defendant had sole and exclusive possession of this knowledge at or before the time it sold the first Class Vehicle, at the time it made repairs inside or outside the warranty

or disclaimed any liability under the warranty and charged consumers for those repairs.

6.    Defendant concealed and failed to disclose the Defect, both at the time of sale or lease of the Class Vehicles either as new or pre-owned vehicles and on an ongoing basis. The Windshield Defect exposes drivers and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death.

7.    At all times, Defendant concealed from and/or failed to disclose to Plaintiffs, the other members of the Class and all others in the chain of distribution, the Defect, and failed to remove the Class Vehicles from the marketplace or take appropriate remedial action. Instead, Defendant sold and serviced the Class Vehicles, and continue to sell and service the Class Vehicles, even though it knows and knew, or was reckless in not knowing, that the Class Vehicles contained the Defect, and that such failure would ultimately result in the inability of Plaintiffs and the other members of the Class to use their vehicles for their intended purpose during the time Plaintiffs and the other members of the Class reasonably expected they would have use of their vehicles. The Defect subjects Plaintiffs and the other members of the Class to an increased risk of accident, injury, or death as well as expensive and repeated repairs.

8. Defendant omitted material information regarding the Windshield Defect from its marketing, advertising, sale, and lease of the Class Vehicles.

9. Many owners and lessees of the Class Vehicles have complained in public forums and to Jeep dealerships and on the NHTSA website about the Windshield Defect and the specific problems it has caused and have requested that Defendant address and remedy the Defect.

10. The extensive number of customer complaints, field investigations, communications with dealers and service technicians, and discussions in on-line forums, establish that FCA knew of the Windshield Defect, yet FCA concealed this information from the public and class members and placed the Class Vehicles in the stream of commerce knowing that Class members would be adversely affected.

11. As a direct and proximate consequence of FCA's active and ongoing concealment and omission of the Windshield Defect, Plaintiffs and the other members of the Class purchased, leased, and currently own or lease defective vehicles and have incurred damages thereby.

12. Had Plaintiffs and other members of the Class known of the Defect at the time of purchase or lease, they would not have bought or leased their vehicles, or would have paid substantially less for them. Each Plaintiff and Class member has suffered an

4

ascertainable loss resulting from FCA's omissions and/or misrepresentations association with the Class Vehicles.

13. Plaintiffs seek actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to Plaintiffs and the Class.

## II.  <u>PARTIES</u>

14. Plaintiff, Jacob Reinkraut, is a New Jersey citizen who lives in Upper Saddle River, New Jersey.

15. Plaintiff, Steve Smith is a North Carolina citizen who lives in Waxhaw, North Carolina.

16. Plaintiff, Matthew Chapman, is a Florida citizen who lives in Sarasota, Florida.

17. Plaintiff, Sari Medina, is a California citizen who lives in Tujunga, California.

18. Plaintiff, Joseph Magee, is a Florida citizen who lives in Crestview, Florida.

19. Plaintiff, JT Willcutt, is a Washington citizen who lives in Olympia, Washington.

20. Plaintiff, Robert Zaugg, is a Utah citizen who lives in West Jordan, Utah.

21. Defendant, FCA USA, LLC (herein "FCA"), is a limited liability company of the State of Delaware with its principal place of business located at 1000 Chrysler Drive, Auburn Hills, Michigan

48326. FCA US LLC, a wholly owned subsidiary of Stellantis N.V. FCA is registered to do business in the State of New Jersey.

22.  At all relevant times, FCA was engaged in the business of designing, manufacturing, marketing, advertising, distributing, selling, leasing and warranting Jeep automobiles, as well as Chrysler, Dodge, Ram, Fiat and Maserati brand motor vehicles and motor vehicle components in New Jersey and throughout the United States of America. Defendants drafted and published the owner's manual and service and warranty information materials and acted as the warrantor of vehicles constructed by the Defendant which are sold in the USA.

A. <u>Plaintiffs' Experiences</u>

23.  On or about June 6, 2022, Plaintiff Reinkraut purchased a pre-owned 2016 4-door, Jeep Wrangler Rubicon, with 33,548 miles, VIN number 1C4BJWFG9GL274352 from Lens Auto at a purchase price of $40,492. Lenz Auto took his 2009 Jeep and paid him a trade in value of $11,000.

24.  Prior to purchase, Reinkraut researched the vehicle he ultimately purchased online and at the Jeep website.

25.  Reinkraut's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Defendant, FCA.

26.  On January 3, 2023, Reinkraut was driving his vehicle when he noticed that the windshield was cracked. He did not see anything impact the windshield. He was surprised the windshield

cracked because he knew that the vehicle had come equipped with Gorilla Glass. Mopar, Chrysler's parts and accessories division, offers a Gorilla Glass windshield kit for the Jeep Wrangler.

27. Below is a photograph of the broken windshield:



28.  Plaintiff Reinkraut's insurance agent recommended that he contact Quest Auto Glass to replace the windshield.

29.  Plaintiff Reinkraut paid $625 for a replacement windshield.

30.  On or about November 2021, Plaintiff Smith purchased a new 2021 Jeep Wrangler Sahara 4xe, VIN number 1C4JJXP69MW727838 for approximately $63,000 from M & L Chrysler Dodge Jeep Ram in Lexington, North Carolina.

31.  Prior to purchase, Smith did extensive online research regarding the vehicle he ultimately purchased on the Jeep sales site.

32.  Smith's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Defendant, FCA.

33.  In the Fall of 2022, Smith pulled his car out of the garage on a 75-degree day and stood chatting with a neighbor for 10 or 15 minutes, with the engine off. When he got into the vehicle to drive to the store he noticed that the front windshield was cracked.

34.  Smith is insured by USAA and has a $1,000 deductible. He had to pay approximately $800 to have his windshield replaced.

35.  In the Spring of 2023, a gnat hit the windshield and caused a chip to develop necessitating a second repair. He traveled to the Safelite Auto Glass facility to have the pit filled in.

36.   On January 15, 2022, Plaintiff Chapman purchased a new 2021 Jeep Gladiator Overland 4x4, VIN number 1C6HJTFG9ML621450 for $55,300.00 from Jim Browne Chrysler Jeep Dodge Ram in Tampa, Florida. The vehicle had 10 miles on it at the time of purchase and currently has 13,356 miles and is still under warranty.

37.   Prior to purchase, Chapman did online research regarding the vehicle that he ultimately purchased.

38.   Chapman's vehicle was designed, manufactured, distributed, advertised, marketed, and warranted by Defendant.

39.   Chapman's vehicle was sold with Corning Gorilla Glass, listed on the Monroney sticker as an extra cost of $195.

40.   On or about December 22, 2022, Chapman observed that his windshield was cracked in two places. There was no cause for this as nothing hit the windshield and there were no marks indicating that a rock or pebble had hit the windshield.

41.   Plaintiff Chapman at first tried to schedule to have the windshield replaced at a Jeep dealership; however, he was advised that the dealership he called did not deal with glass. Consequently, on December 22, 2022 he called Safelite Auto Glass who came to his home and replaced the windshield. His insurance company covered the cost of the repair.

42.   In March 2021, Plaintiff Medina leased a new 2021 Jeep Wrangler, VIN number 1C4HJXEM0MW565825 from Glendale Jeep Ram Doge

in Glendale, California. The vehicle currently has approximately 35,000 miles and is still under warranty.

43.   Prior to purchase, Medina did online research regarding the vehicle that she ultimately purchased.

44.   Medina's vehicle was designed, manufactured, distributed, advertised, marketed, and warranted by Defendant.

45.   On May 22, 2022, Medina woke up and observed that her windshield was cracked. There was no cause for this as nothing hit the windshield and there were no marks indicating that a rock or pebble had hit the windshield. Below is a photo of her broken windshield as she found it that morning:



46. Plaintiff Medina inquired about having the windshield repaired by the dealership but was informed that the windshield was not covered. She paid $465.00 out of pocket for a new windshield.

47. On June 1, 2022, Plaintiff Magee purchased a brand new 2022 Jeep Gladiator VIN number 1C6JJTEG4NL143054 for $51,448 from Step One Chrysler Dodge Jeep Ram of Crest View, Florida. The vehicle is still under warranty.

48. Prior to purchase, Magee did online research regarding the vehicle that he ultimately purchased.

49. Magee's vehicle was designed, manufactured, distributed, advertised, marketed, and warranted by Defendant.

50. Magee's vehicle was sold with Corning Gorilla Glass installed by the factory.

51. In August or September 2022, Magee observed that his windshield was cracked. There was no cause for this as nothing hit the windshield and there were no marks indicating that a rock or pebble had hit the windshield.

52. Plaintiff Magee at first tried to have the dealership replace the broken windshield but they refused and had contacted Chrysler. Chrysler indicated that they would not cover it under the warranty. Magee purchased a new Gorilla Glass windshield and had it installed. The cost was reimbursed by his insurance company

since Florida has a statute which requires one free windshield replacement per year.

53. On August 31, 2021, Plaintiff Willcutt purchased a new 2021 Jeep Gladiator Overland 4x4, VIN number 1C6HJTFG6ML568903 for $55,270.00 but with taxes and fees totaled $60,100.21 from Olympia Chrysler Jeep, in Olympia Washington. The current mileage is 18,614 miles and the vehicle is still under warranty.

54. Prior to purchase, Willcutt did online research regarding the vehicle that he ultimately purchased.

55. Wilcutt's vehicle was designed, manufactured, distributed, advertised, marketed, and warranted by Defendant.

56. Within a week of bringing the vehicle home he noticed that the windshield had cracked. There was no cause for this as nothing hit the windshield and there were no marks indicating that a rock or pebble had hit the windshield.  He has been driving the vehicle with a crack in the windshield ever since.

57. On July 30, 2021, Plaintiff Zaugg purchased a 2021 Jeep Wrangler 4xe High Altitude, VIN 1C4JJXP65MW716691, for $64,425 from Salt Lake Valley Jeep. The current mileage is 28,000.

58. In late November 2021, when the vehicle had only 6,000 miles on it, Zaugg was warming up the Jeep in his driveway so that he could drive his children to school when he noticed that a crack started at the bottom middle section of the windshield and rapidly spread to the right side of the windshield The Vehicle was parked

at the time, there were no signs of impact from a rock or any chip anywhere along the cracking and the windshield was clear of ice and snow. Cracking progressed every time he used the front defroster during cold weather, so he stopped using the defroster while warming the vehicle.

59.    Zaugg took the vehicle back to the Jeep dealership where he purchased the vehicle and was told that since he did not buy windshield protection at the time of purchase he was out of luck. Zaugg has since taken the vehicle to another dealership for servicing. An employee at the new dealership told Zaugg that he has seen a lot of the 'newer model' Wranglers in for windshields with cracking in the exact same spot. Since then Zaugg has noted that many other Jeep owners have had the same experience as noted on internet forums.

60.    To date, Zaugg has not replaced his windshield because he does not want to incur the cost when believes the windshield will just crack again due to defects in Jeep's manufacturing process.

61.    The proposed class representatives and proposed class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance, and product use obligations for their respective class vehicles. The proposed class representatives and proposed class members operated their

class vehicles under normal anticipated conditions in noncommercial environments.

62. Certain of the proposed class representatives were informed by a representative of FCA that the company would not provide assistance in repairing or replacing the windshields because the Class Vehicles were outside of the express warranty period or the broken windshield was not covered by the express warranty.

63. Through no fault of their own, the proposed class representatives and proposed class members did not possess sufficient technical expertise to recognize that their windshields would be prone to repeated failure. This information, however, was well known to FCA, but not revealed.

64. Plaintiffs and the Class have suffered an ascertainable loss as a result of the Defendant's omissions associated with the Windshield Defect, including but not limited to, out-of-pocket losses and diminished value of the vehicles.

65. If Plaintiffs and the other members of the Class were aware of the concealments, failures to disclose and omissions described herein, they would not have purchased their vehicles or would have paid significantly less for them.

### III. JURISDICTION AND VENUE

66. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.

§1332(d)(2), as the Class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from Defendant and seeks in the aggregate more than Five Million Dollars ($5,000,000.00), exclusive of costs and interest. This Court also has original federal question jurisdiction because Plaintiffs assert claims arising under the Magnuson-Moss Warranty Act, 15 U.S.C. Section 2301 et seq.

67.    This Court has personal jurisdiction over the parties because Defendant conducts substantial business in New Jersey. Defendant has purposefully availed itself of the benefits and protections of the District of New Jersey by continuously and systematically conducting substantial business in this judicial district and has agents and representatives that can be found in this State.

68.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiff, Reinkraut is a citizen of this District, a substantial part of the events giving rise to the claims set forth herein occurred and emanated from this district, and Defendant's conduct has injured members of the Class residing in this district. Further, Defendant advertises in this district, and it profits from its activities conducted within this district. Accordingly, this Court has jurisdiction over this action, and venue is proper in this judicial district.

15

## IV. <u>TOLLING OF STATUTE OF LIMITATIONS</u>

69. Any applicable statute(s) of limitations have been tolled by FCA's knowing and active concealment and denial of the facts alleged herein. Despite their due diligence, Plaintiffs and the other members of the Class could not have reasonably discovered the repeated breaking of the windshields on the Class Vehicle was caused by the Windshield Defect until shortly before this class action litigation was commenced.

70. FCA was and remains under a continuing duty to disclose to Plaintiffs and the other members of the Class the true character, quality, and nature of the Windshield Defect, that the Windshield Defect will require repeated and costly repairs, that the Windshield Defect poses a safety concern, and that the Windshield Defect diminishes the resale value of the Class Vehicles. As a result of the active concealment by FCA, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

71. Moreover, because the Windshield Defect could not be detected due to FCA's purposefully fraudulent concealment, Plaintiffs and the other members of the Class were not reasonably able to discover the Windshield Defect until long after purchasing or leasing the Class Vehicles, despite their exercise of due diligence. Thus, the discovery rule is applicable to the claims asserted by Plaintiffs and the other members of the Class.

72.   Any applicable statute of limitation has therefore been tolled by FCA's knowing, active concealment and denial of the facts alleged herein.  FCA is estopped from relying on any statutes of limitation because of its concealment of the Defect.

## V. <u>JEEP'S WARRANTY IS UNCONSCIONABLE</u>

73.   FCA's time limits on its Written Warranties are procedurally and substantively unconscionable.   The Written Warranties are offered on a take-it-or leave-it basis without any input from consumers in a "boiler-plate" printed forms that are oppressive and surprise consumers. Moreover, FCA is in a superior bargaining position.  The Written Warranties are substantially unconscionable because FCA knowingly and/or recklessly sold a defective product that was defective at the time of sale, without conspicuously informing consumers about the defects in the Windshield would result in premature cracking, chipping and fracturing with little or no impact. The time limits on the Written Warranties are grossly inadequate to protect Plaintiffs and Class members.

74.   The terms of the Written Warranties unreasonably favor Defendant by unreasonably limiting the time frame on each Warranty; a gross disparity in bargaining power existed as between Defendant and Plaintiffs and the Class members; Plaintiffs and Class members had no meaningful choice in determining those time limitations; and Defendant knew or should have known that the Windshields were

defective at the time of sale and would fail prematurely requiring expensive and repeated replacements, thereby creating overly harsh and one-sided results due to a defect that FCA knew existed at the time of sale. In its capacity as a warrantor, and by the conduct described herein, any attempt by FCA to limit the express warranties in a manner that would exclude coverage for the Windshield Defect is unconscionable and any such effort to disclaim or otherwise limit liability for Defective Windshields is null and void as alleged above.

## VI. <u>FACTUAL BACKGROUND</u>

A.   <u>The Reasonable And Legitimate Expectations Of Plaintiffs And The Members Of The Putative Class</u>

75.   Customers purchasing or leasing vehicles reasonably and legitimately expect that those vehicles, like the Class Vehicles at issue herein, will properly function for many years.

76.   In purchasing or leasing their vehicles, Plaintiffs and the other members of the Class reasonably and legitimately expected their vehicles to be reliable, and to operate in accordance with all of their intended purposes – including not having to replace the windshield repeatedly due to the Windshield Defect.

77.   In purchasing or leasing their vehicles, Plaintiffs and the other members of the Class reasonably and legitimately

expected that the Class Vehicles would be free from the Windshield Defect.

78.   The existence of the Windshield Defect is a fact that would be considered material to a reasonable consumer deciding whether to purchase or lease an expensive Jeep vehicle. Particularly since FCA touts its vehicles as safe and reliable for many years of use with proper maintenance.

79.   Customers like Plaintiffs and the other members of the Class, reasonably and legitimately expect and assume that a vehicle will function in their intended manner, will not pose a safety hazard, and are free from defects. Plaintiffs and the other members of the Class also reasonably and legitimately expect and assume that Defendant will not sell or lease vehicles with a known defect, will disclose any such defects to consumers when they learn of them, and take all steps to remedy any defect in a manner that does not cause additional cost to the customer. It was reasonable and legitimate for Plaintiffs and the other members of the Class to expect FCA not to actively and intentionally conceal problems with the Jeep windshields from them – such as the Windshield Defect described herein, to continually deny its existence, and refuse to bear the repair costs that become necessary to correct the problems resulting from the Windshield Defect.

80. FCA has acknowledged the importance of the windshield in its vehicles in its collision repair newsletter stating: "The role of the windshield is a lot more complex than simply allowing a view of the road ahead. It is considered a structural part of the vehicle as it contributes to the strength of the roof and A-pillars. The windshield helps to manage collision energy and has become an integral part of several advanced safety systems."

https://rts.i-car.com/collision-repair-news/crn-438.html

81. FCA knew that the Windshield Defect adversely impacted the safety and integrity of the Class Vehicles.

82. Throughout the period that the Class Vehicles were sold and leased, FCA marketed, promoted, and advertised the Jeep Wrangler Vehicles as reliable, safe, and rugged.

83. Plaintiffs and the other members of the Class reasonably and legitimately expected Jeep to disclose the existence of the Windshield Defect and that the Class Vehicles were prone to repeated cracking, fracturing or chipping of the Jeep windshields that were known to FCA at the time of sale or lease, or when the vehicle was brought in for regular maintenance or repairs.

84. Plaintiffs and the other members of the Class could not have discovered the Windshield Defect through any reasonable inspection of their vehicles prior to purchase.

85. As a direct and proximate result of the Windshield Defect, Plaintiffs and the other members of the Class have

experienced broken windshields caused by minimal or no impact, or caused by temperature variations between the inside and outside of the vehicle which is to be expected during various times of the year in most climates.   Plaintiffs and the Class did not receive what they paid for, and have incurred actual damages, including diminution in value.

86.   Had Plaintiffs and other members of the Class known about the Windshield Defect while they were in the market for purchasing or leasing a vehicle, they would not have purchased or leased the Class Vehicles or, at the very least, would have paid less for them particularly due to the increased risk of accident, injury or death.

**B.   Defendants' Awareness Of The Defect**

87.   Plaintiffs allege that at all relevant times, specifically at the time they purchased or leased their vehicles and when their vehicles were brought in for service, Defendant knew of the Windshield Defect and the safety dangers of the Windshield Defect. FCA was under a duty to disclose the Windshield Defect based upon its exclusive knowledge of and/or concealed material information regarding the Windshield Defect; FCA failed to disclose the Defect to Plaintiffs, other Class members, or the public at any time or place or in any manner such that it could (and would) have affected Plaintiffs' and other class members' pre-sale decision to purchase and/or lease the Class Vehicles.

88. The Defendant failed to inform Class Vehicle owners and lessees prior to purchase that the windshields of Jeep Wranglers and Gladiators and were subject to premature cracking, fracturing or chipping, would fail shortly after expiration of the express warranty or would be denied warranty coverage based upon exclusions in the warranty. FCA misrepresented by affirmative conduct and/or omission and/or fraudulent concealment that the Windshield Defect existed.

89. The Defendant also failed to inform Class Vehicle owners and lessees at the time of purchase that the windshield in their Class Vehicle's had been inadequately designed, manufactured and tested prior to placing the car in production and the time of Class Vehicle sale.

90. There is substantial evidence from numerous sources that FCA was aware that there were problems with Jeep Wrangler and Gladiator windshields prior to Plaintiffs purchasing their Class Vehicles.

91. Mopar, the parts supplier for FCA, including Jeep, offered Mopar® windshields made with Corning Gorilla Glass for Jeep Wranglers starting with model year 2007, as well as for Gladiators. Although many Wrangler and Gladiator owners with Gorilla Glass, including two of the Plaintiffs, has still experienced a broken Gorilla Glass windshield, this shows that

FCA was aware of the problem. See https://www.mopar.com/en-us/shop/parts/gorilla-glass.html

92. Defendant also knew, or reasonably should have known, of the Defect based upon the number of complaints it received from its dealerships and service shops. FCA requires its dealerships to sign a Dealer Agreement which requires the dealerships to provide FCA with access to all the service and warranty service records for repairs made by the individual dealerships. FCA requires its dealerships to have a computer system that serves as FCA's primary link to the dealership, including for parts, ordering, warranty claims, filing of reports, etc. Mopar using Cherwell navigation and case management for dealers enables this communication. Moreover, Stellantis maintains a computer system known as Dealer Connect which permits Dealers to communicate electronically with FCA regarding parts ordering, warranty repairs, recalls and also utilizes Mopar.com which is the parts, service and customer car division of the former Chrysler Corporation, which serves as a primary OEM accessory seller for Stellanis brands under the Mopar brand. Through these systems, Defendant has the ability to and does interact with Jeep dealers on a regular basis so as to be fully informed and troubleshoot problems as soon as they arise. The common, serious windshield breakage problem in Jeep Wranglers is one such problem.

93. Various departments at FCA interact with the dealerships and service shops in order to identify potentially widespread vehicle problems. These departments collect and analyze data from the dealerships and service shops in order to identify any problems in its vehicles. Mopar's Service Technical Assistance Resource has opened Star Cases for Stellantis Technicians which involving windshield issues. According to the information provided on the Mopar website, Star Center agents benefit dealers by: "Providing insight into emerging issues with Stellantis vehicles." Thus, FSA is made aware of specific problems the vehicles are having through this online portal.

https://cherwell.extra.chrysler.com/Help/external/Star%20Case%20Criterion.pdf

94. Further, FCA's customer relations division regularly receives and responds to customer calls, emails, and other correspondence concerning, *inter alia*, product defects. Through these sources, FCA was made aware, or reasonably should have been made aware, of the Windshield Defect, which is a problem that has persisted for years.

95. Additionally, there are numerous complaints posted on the database maintained by the National Highway Traffic Safety Administration which FCA was clearly aware of and has an obligation to monitor. Car manufacturers have a legal obligation pursuant to federal law to monitor defects that can cause a safety

issue and report them within five (5) days of learning of them. Consequently, FCA closely monitors the NHTSA-ODI website and the complaints filed therein to comply with their reporting obligations under federal law.

96.   Just some of the windshield-related Complaints related to various model year Jeep Wranglers and Gladiators, including model year vehicles owned by the Plaintiffs appear below:

**December 17, 2022** NHTSA ID NUMBER: 11497847
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11497847

Incident Date December 16, 2022

Consumer Location FERNANDINA BEACH, FL

Vehicle Identification Number 1C6JJTEG4ML****

Summary of Complaint

CRASH No

FIRE No

INJURIES 0

DEATHS 0

I turned on my defroster and a 8 inch long crack happens from the middle bottom of the windshield. This is the second time in a year this has happened. There are numerous examples online of this happening. I live in Florida so it's not because of the extreme temperature changes. It was only 50 deg F.

**August 22, 2022** NHTSA ID NUMBER: 11480565
**Components: UNKNOWN OR OTHER, VISIBILITY/WIPER**
NHTSA ID Number: 11480565

Incident Date February 17, 2022

Consumer Location OREGON, IL

Vehicle Identification Number 1C6HJTAG2ML****

Summary of Complaint

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

Windshield cracked in center - replaced - 3rd windshield installed today(8/22/2022) 1st 2 cracked in same place. If broke could enter driver/passenger compartment. Windshield repair shop and now again by Kunes CDJR Oregon (Chrysler dealer/place first purchased/new), Oregon, Illinois. Inspected by service department at dealership -

June 21, 2021 **NHTSA ID NUMBER: 11421658**

## Components: VISIBILITY
**NHTSA ID Number:** 11421658

Incident Date May 21, 2021

Consumer Location ATLANTA, GA

Vehicle Identification Number 1C6HJTAGXML****

Summary of Complaint

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

The contact owns a 2021 Jeep Gladiator. The contact stated while driving at 70 mph, a rock flew and hit the window causing the windshield to crack on the passenger side. The vehicle was taken to a glass repair shop where it was diagnosed with the windshield needing to be replaced. The vehicle was repaired but the failure recurred a week later causing the windshield to crack down the middle. The manufacturer had not been informed of the failure. The failure mileage was approximately 7,50

**January 28, 2015** NHTSA ID NUMBER: 10679399
**Components: STRUCTURE, VISIBILITY/WIPER**
NHTSA ID Number: 10679399

Incident Date January 27, 2015

Consumer Location GAITHERSBURG, MD

Vehicle Identification Number 1C4HJWEG3DL****

Summary of Complaint

THE NIGHT BEFORE AND MORNING OF WE HAD SNOW (01/26/2015-01/27/2015). I WENT OUT TO MY JEEP, CLEANED IT OFF, STARTED IT UP, TURNED THE DEFROSTER, PUT IT IN DRIVE, AND A 8 INCH CRACK APPEARED ON THE LOWER PART OF THE WINDSHIELD. THE CRACK STARTED RIGHT ABOVE THE WINDSHIELD FRAME THEN RAN PARALLEL ABOVE THE DEFROST VENTS. *TR

**January 12, 2015** NHTSA ID NUMBER: 10672001
**Components: STRUCTURE**
NHTSA ID Number: 10672001

Incident Date January 7, 2015

Consumer Location EAGLEVILLE, PA

Vehicle Identification Number N/A

Summary of Complaint

GOT COLD OUT AND MY WINDSHIELD CRACKED BY ITSELF. JEEP REFUSES TO WARRANTY THE GLASS EVEN THOUGH I HAVE BUMPER TO BUMPER WARRANTY AND THIS WAS CRACKED OVERNIGHT IN THE DRIVEWAY. *TR

**January 4, 2015** NHTSA ID NUMBER: 10669973
**Components: STRUCTURE, VISIBILITY/WIPER**
NHTSA ID Number: 10669973

Incident Date January 4, 2015

Consumer Location PERU, IL

Vehicle Identification Number 1C4BJWCG3DL****

Summary of Complaint

I WAS DRIVING MY 2013 JEEP WRANGLER AND THE WIPER WAS ICED UP SO I TURNED THE DEFROSTER ON HIGH AND MY WINDSHIELD CRACKED. THERE WERE NO VEHICLES ON THE ROAD WITH ME AND NOTHING HIT MY WINDSHIELD. THE CRACK IS ABOUT 6 INCHES LONG RUNNING LATERALLY TOWARD THE DRIVER SIDE AND ORIGINATED RIGHT ABOVE THE RIGHT DEFROSTER VENT THE CRACK HAS NO EXTERNAL RIDGE AND APPEARS TO BE RELATED TO A

BODY STRESS ISSUE. THE TEMPERATURE WAS 20 DEGREES AND THE ISSUE OCCURRED AT 3:20 PM. *TR

**March 2, 2015** NHTSA ID NUMBER: 10691578
**Components: VISIBILITY**
NHTSA ID Number: 10691578

Incident Date February 23, 2015

Consumer Location SAGINAW, TX

Vehicle Identification Number 1N6AA0EC6EN****

Summary of Complaint

THIS INCIDENT HAPPENED FEBRUARY 23, 2015 AROUND 9AM . IT WAS SNOWING THAT DAY AND THE TEMPERATURE WAS IN THE 20'S. I WAS IN THE VEHICLE AND HAD THE DEFROSTER/HEATER TURNED UP ALL THE WAY. ABOUT 5 MINUTES LATER OF SITTING, I HEARD A POPPING NOISE. ABOUT A FEW SECONDS LATER OF HEARING THIS POPPING NOISE I SLOWLY SEE A CRACK ON THE BOTTOM OF THE DRIVER SIDE WINDSHIELD JUST OVER 16 INCHES BUT NO MORE THAN 2 FEET LONG. I RECENTLY JUST MOVED FROM SAN DIEGO AND MY JEEP HAS NEVER SEEN SNOW OR HAD EXPERIENCE WITH THE COLD WEATHER BEFORE. I WENT ON WRANGLERFORUM.COM (JEEP ENTHUSIAST WEBSITE) AND THAT IS WHERE I FOUND OUT THAT I WASN'T ALONE. MORE JEEPS HAD THEIR WINDSHIELD CRACK DURING THE WINTER DUE TO THEM TURNING THE DEFROSTER/HEATER ABRUPTLY. I THINK THERE IS A DEFECT ON THE WINDSHIELD OR THE INSULATION AND NEEDS TO BE ADDRESSED. CHRYSLER/JEEP HAD DECLINED THE WARRANTY BECAUSE THEY CLAIM ITS FROM AN EXTERNAL FACTOR. AND I ASSURE YOU, I DON'T HAVE A CHIP ON MY WINDSHIELD. *TR

**February 18, 2020** NHTSA ID NUMBER: 11309761
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11309761

Incident Date February 4, 2020

Consumer Location RUIDOSO, NM

Vehicle Identification Number 1C4BJWFG1DL****

Summary of Complaint

WHILE DRIVING ON A COLD NIGHT WITH NO OTHER DRIVERS ON THE ROAD, MY WINDSHIELD SUDDENLY CRACKED. I HAD THE DEFROSTER ON. I'VE READ ABOUT HUNDREDS OF OTHER PEOPLE WHO HAVE HAD THIS ISSUE WITH THEIR

JEEPS. IT'S AN ISSUE AND THEY DON'T WANT TO TAKE RESPONSIBILITY
FOR IT.

**May 31, 2016** NHTSA ID NUMBER: 10871619
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 10871619

Incident Date May 2, 2016

Consumer Location DETROIT, MI

Vehicle Identification Number L705673****

Summary of Complaint

THIS IS THE 3RD TIME I HAVE TO REPLACE THE FRONT WINDSHIELD.
PLEASE, THIS IS NOT OF STONES OR PEBBLES, OR CHIPS. EACH TIME THE
WINDSHIELD CRACKED I EITHER HAD THE HEATER OR AIR CONDITIONER ON.

**January 13, 2015** NHTSA ID NUMBER: 10672267
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 10672267

Incident Date January 12, 2015

Consumer Location DIVIDE, CO

Vehicle Identification Number 1C4BJWDGXDL****

Summary of Complaint

EXTREME TEMPS WARMING THE JEEP UP AND TURNED ON THE DEFROST. THE
WINDSHIELD CRACKED IN A CIRCLE TYPE PATTERN THEN MULTIPLE LONG
CRACKS ALONG THE ENTIRE BOTTOM OF THE GLASS. VEHICLE WAS ONLY A
FEW MONTHS OFF THE LOT AND NO ROCK CHIPS IN THE WINDSHIELD. *TR

**June 21, 2015** NHTSA ID NUMBER: 10726458
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 10726458

Incident Date June 16, 2015

Consumer Location MOUNT JOY, PA

Vehicle Identification Number 1C4AJWAG6DL****

Summary of Complaint

THUS FAR IN TWO YEARS OF SERVICE MY VEHICLE HAS HAD FOUR WINDSHIELDS REPLACED DUE TO CRACKS. CRACKS WERE FROM STONES THROWN FROM OTHER VEHICLES WHILE JEEP WAS BEING DRIVEN ON HIGHWAY. I HAVE DONE SOME RESEARCH AND THERE ARE MANY, MANY OTHER JEEP OWNERS HAVING THE SAME PROBLEMS. AN INSTALLER FROM SAFELIGHT AUTO GLASS TOLD ME THE WINDSHIELDS ARE BEING MADE MUCH LIGHTER TO HELP REDUCE THE WEIGHT OF THE VEHICLE. THERE ARE SO MANY WINDSHIELDS BREAKING THE LAST I HEARD THERE WERE 4000 OEM ON BACK ORDER. THE ONLY CHOICE IS TO GET A NON OEM INSTALLED TO GET THE VEHICLE BACK ON THE ROAD. NEVER IN OVER 50 YEARS OF DRIVING HAVE I HAD FOUR WINDSHIELDS BROKEN FROM STONES. PROBLEM IS COSTING INSURANCE COMPANIES AND INDIVIDUAL'S A LOT OF MONEY.

**March 4, 2014** NHTSA ID NUMBER: 10567070
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 10567070


**March 1, 2018** NHTSA ID NUMBER: 11075699
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11075699

Incident Date February 8, 2018

Consumer Location ROUND LAKE HEIGHTS, IL

Vehicle Identification Number 1C4BJWEG1GL****


Summary of Complaint

I AM ON THE SECOND WINDSHIELD IN LESS THAN 2 YEARS. THE FIRST ONE COULD HAVE BEEN CAUSED BY IMPACT AS IT OCCURRED WHILE I WAS DRIVING ON A HIGHWAY. THE SECOND TIME IN LESS THAN 6 MONTHS (FIRST WINDSHIELD WAS REPLACED WITH MOPAR OEM PARTS) I WAS SITTING AT A RED LIGHT WHEN I SAW IT CRACK, THERE WAS NO IMPACT. I HAD MY DEFROSTERS ON HIGH HEAT AND HIGH FAN. THE CRACK WENT FROM THE CENTER OF THE WINDSHIELD ALL THE WAY TO THE DRIVERS SIDE. RESEARCHING ON LINE THIS IS A VERY COMMON ISSUE WITH THE VEHICLE AND NEEDS TO BE RECALLED AND BETTER GLASS SHOULD BE INSTALLED.

**1 Affected Product**


**March 2, 2014** NHTSA ID NUMBER: 10566698
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 10566698

Incident Date February 2, 2014

Consumer Location FLOWER MOUND, TX

Vehicle Identification Number 1C4BJWEG4DL****

Summary of Complaint

SITTING IN VEHICLE AND HEARD A LOUD POP FROM FRONT WINDSHIELD.
NOTICED A CRACK NEAR BOTTOM OF FRONT WINDSHIELD WHICH CONTINUED TO
GROW IN LENGTH. VEHICLE WAS IN PARK AND NOT MOVING AT TIME OF
OCCURRENCE. HEAT WAS ON IN THE VEHICLE AND IT WAS VERY COLD
OUTSIDE. I HAVE READ MULTIPLE COMMENTS IN FORUMS REGARDING THE
SAME SITUATION. *TR

**March 14, 2023** NHTSA ID NUMBER: 11511695
**Components: UNKNOWN OR OTHER**
NHTSA ID Number: 11511695

Incident Date January 3, 2023

Consumer Location Unknown

Vehicle Identification Number 1C4BJWFG9GL****

Summary of Complaint

Windshield broke and it happened previously with a older jeep
pebble on the highway likely kicked up and hit the windshield I
believe because the windshield is flat there is an increased risk
of breakage.

NHTSA ID Number: 11505690

Incident Date February 5, 2023

Consumer Location SEATTLE, WA

Vehicle Identification Number 1C4HJXEN4KW****

Summary of Complaint

Back window keeps exploding and it's parked in a covered space.
Temps have been ok nothing super cold . Only happens when I'm home.
Nothing was take out of my car so it wasn't vandalism cause I had
50 cash in the seat that fell out of my pocket.

**July 30, 2022** NHTSA ID NUMBER: 11476719
**Components: UNKNOWN OR OTHER**

NHTSA ID Number: 11476719

Incident Date January 1, 2022

Consumer Location HIGGINSVILLE, MO

Vehicle Identification Number 1C4HJXDN0KW****

Summary of Complaint

The windshield design for 2018-2019 Jeep Wranglers was changed compare to those prior. This change made the windshield almost upright with little slant. This design is a major flaw that they don't want to admit to consumers although when visiting the dealership or talking with them on the phone they say that this is the issue but it isn't their problem. Because of this design it is prone to constant chips even ones that you cannot see. These chips, even little surface ones you can't see and can feel cause the windshield to crack when it gets really cold outside. I had this happen 4 times in 2 years! I am 42 years old and have never had to use my car insurance until getting this Jeep. Now my insurance company wants to drop me and no one else wants to insure me. I know other Jeep owners have this same problem and it is a major flaw in the design that is causing many issues that not only affect our livelihood but our safety. I am listed one month of a cracking but as stated it has happened 4 times and it was parked and not moving each time, thankfully.


**December 19, 2019** NHTSA ID NUMBER: 11290191
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11290191

Incident Date October 17, 2019

Consumer Location SCOTTSDALE, AZ

Vehicle Identification Number 1C4HJXEN2KW****

Summary of Complaint

PLEASE CHECK IF THERE IS A FLAW IN 2018-20 JEEP WRANGLER WINDSHIELDS. THEY EASILY CRACK, MULTIPLE TIMES. THERE ARE ENTIRE WEBSITES AND COMMUNITY GROUPS EXPERIENCING THIS PROBLEM. I ALSO OWN A 2014 WRANGLER, AND HAVE REPLACED THE WINDSHIELD TWICE. WITH MY 2019 MODEL, I HAVE HAD MULTIPLE CRACKS AND REPLACED TWO WINDSHIELDS IN UNDER 3500 MILES OF A BRAND NEW CAR. YET, THE 2019 MODEL HAS A MORE ANGLED WINDSHIELD THAN THE PREVIOUS MODEL. THE

ISSUE OCCURS AT ROAD TO HIGHWAY SPEEDS AND SIMPLE PEBBLES. AGAIN, MY TWO REPLACED WINDSHIELDS HAD MULTIPLE STREAKS, CRACKS, SPIDERS, ET AL BEFORE REPLACING. SOMETHING IS WRONG WITH THE GLASS JEEP/MOPAR USE.

**October 11, 2019** NHTSA ID NUMBER: 11267865
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11267865

Incident Date October 1, 2019

Consumer Location ALTUS, OK

Vehicle Identification Number 1C4HJXFN8KW****

Summary of Complaint

THE WINDSHIELDS ON THE JEEP WRANGLERS CONTINUE TO BE A BANE OF OWNERS EVERYWHERE. THEY ARE MUCH TOO EASILY CHIPPED, CRACKED, AND DAMAGED OTHERWISE BECAUSE OF THE TERRIBLE LACK OF RAKE AND AERODYNAMICS TO REFLECT SMALL OBJECTS HARMLESSLY OFF THEM LIKE MOST OTHER AUTOS. THEY ARE ALSO A VISIBILITY HAZARD AS THEY ATTRACT SO MANY BUGS THAT CANNOT BE EASILY WASHED OFF WITH THE CONVENTIONAL WIPERS/FLUID. THIS HAPPENS ON A CONSISTENT BASIS ACROSS THE COUNTRY. JUST RESEARCH ALL THE WINDSHIELD REPLACEMENT CLAIMS FOR JEEP.

**March 12, 2019** NHTSA ID NUMBER: 11186063
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11186063

Incident Date March 12, 2019

Consumer Location FORT BENNING, GA

Vehicle Identification Number 1C4HJXFGXKW****

Summary of Complaint

WINDSHIELD CHIPS EASILY. WHILE DRIVING INTO WORK AT SPEEDS AROUND 35MPH A SMALL CHIP OCCURRED EXTREMELY EASILY. I AM NOT ONE TO FOLLOW CLOSE BEHIND PEOPLE AND IN 16 YEARS OF DRIVING HAVE NEVER HAD A CRACKED WINDSHIELD. THIS HAPPENED ON DAY 3 OF OWNERSHIP. GETTING ON JEEP FORUMS THERE ARE 23 PAGES OF PEOPLE THAT HAVE REPLACE THEIR $500 WINDSHIELDS MULTIPLE TIMES.

**October 17, 2022** NHTSA ID NUMBER: 11489683
**Components: UNKNOWN OR OTHER**
NHTSA ID Number: 11489683


**January 12, 2022** NHTSA ID NUMBER: 11447272
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11447272

Incident Date January 12, 2022

Consumer Location CHESAPEAKE, VA

Vehicle Identification Number 1C4HJXFG3LW****


Summary of Complaint

Windshield cracked in cold with defroster on from top of windshield
down between steering wheel and rear view mirror. Upon research
this is a common problem in the cold and could cause visibility
issues in cold weather states.


**May 19, 2020** NHTSA ID NUMBER: 11325127
**Components: UNKNOWN OR OTHER**
NHTSA ID Number: 11325127

Incident Date May 18, 2020

Consumer Location FORT MYERS, FL

Vehicle Identification Number 1C4HJXFN8LW****


Summary of Complaint

WINDSHIELD MAJOR DAMAGE FROM A SMALL INSIGNIFICANT IMPACT. *TR


**March 7, 2023** NHTSA ID NUMBER: 11510622
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11510622

Incident Date December 8, 2021

Consumer Location WEST JORDAN, UT

Vehicle Identification Number 1C4JJXP65MW****

Summary of Complaint

Windshield cracked in the winter at less than 8000 miles due to
front window defroster being way too hot. Windshield continues to
crack and degrade every time the defroster comes on (automatically
with remote start) and has made the windshield unsafe due to
impairment of visibility. Jeep denies that there is a problem,
though they have been quietly replacing windshields to resolve
customer complaints without addressing the safety issue with
these.

**December 19, 2022** NHTSA ID NUMBER: 11498066
**Components: UNKNOWN OR OTHER**
NHTSA ID Number: 11498066

Incident Date November 22, 2022

Consumer Location GOLDVEIN, VA

Vehicle Identification Number 1C4HJXEG6MW****

Summary of Complaint

I am now on my 4th new windshield. I've owned my Jeep for less
than 2 years, the last two windshields had to be replaced within
3 months of each other. I understand that Jeeps have a reputation
for windows easily cracking, but the manner in which they crack
and spread is terrifying. It will start as a small chip and then
quickly escalate to a spider web crack that rapidly expands in
length. A lot of times this happens on a highway (chip of rock
will hit the windshield or edge of it) and as I'm driving to get
where I need to go, the crack just crawls across - seems very
dangerous. Typically I am not in a situation where I can stop -
just need to head home and then call for a replacement.

**May 5, 2022** NHTSA ID NUMBER: 11463494
**Components: VISIBILITY/WIPER, FORWARD COLLISION AVOIDANCE**
NHTSA ID Number: 11463494

Incident Date August 6, 2021

Consumer Location MARIETTA, GA

Vehicle Identification Number 1c4hjxen8mw****

Summary of Complaint

1. Water leak and windshield cracked because windshield seal broken. Windshield seal found to be broken or cracked by dealership. 2. Windshield cracked and water leaking into Forward Crash Collison Avoidance Radar housing and onto viewscreen which has quit working. 3. Cracked windshield causing visual impairment.

**March 7, 2022** NHTSA ID NUMBER: 11455585
**Components: VISIBILITY/WIPER**
NHTSA ID Number: 11455585

Incident Date March 7, 2022

Consumer Location BINGHAMTON, NY

Vehicle Identification Number 1C4HJXDG0MW****

Summary of Complaint

My windshield has cracked 2 separate times. I got it fixed by safelife after the first, the second just happened today. Both times I never heard anything hit the window and the crack just appeared. I had a jeep wrangler before this one and never had any issues with the windshield. This one is brand new and has been on the road since Nov 2021 and now has 2 issues. It leads me to believe it is a manufacturing issue. I work from home and don't drive very often, when I do it's highway. I just can't believe that it has cracked twice.

97. Finally, there continues to be numerous posts on the Wrangler online forum:

I've had 3 cracked windshields since late July. My latest one lasted less than a week (replaced on 2/7), I decided to leave it for the time being and just got a seperate chip/crack a few days ago which had I changed it back on 2/14 I'd be on my 5th windshield - Ridiculous!
Mar 2, 2019 #333 2018 Rubicon JL

I'd keep all the receipts for replacement glass for sure. The problem is more widespread then JLs and FCA products. Something will probably be done IF enough consumers voice up. Or if some enterprising lawyer smells a class action lawsuit in the making.

Looks like the problem probably is the Acoustic Glass. I just did

a quick search on acoustic glass. Audi, Honda, Toyota, Mazda,
Subaru Forums all have reports of acoustic glass being fragile and
cracking at much higher rates then previous non-acoustic
windshields. Subaru extended the warranty on it's acoustic glass
due to cracks from thermo expansion.

FCA must have known about how fragile the acoustic glass is because
they offer a 'optional' Gorilla glass that is advertised as more
durable. I wonder how much more durable the Gorilla Glass
Windshield is? Anyone have a idea of the cost difference between
the acoustic glass and Gorilla Glass? FCA probably should have
installed the Gorilla Glass as a standard feature but I am sure
the bean counters threw that out the window.

I would also be super careful when dropping your windshield if
that's you type of thing.
March 6, 2109 #361 2019 JLR 2.0T, 22 JLR 3.6

Never had a cracked or chipped windshield in 30 years, including
4 years in a JK. Got my first one driving back from the dealer
last week in December. Finally had it replaced through insurance
yesterday morning.

Three hours later on the interstate and hear what sounds like sand
hitting the windshield, one of which caused an obvious chip.
Stopped to look close and there are literally 6 small chips, one
large chip and a 4 inch crack moving up from the bottom, all caused
by nothing more than sand sized impacts. This glass is clearly not
up to the task
March 6, 2109 #363 2015 JKUR


0 months and 9500 miles, and big crack from bottom center.

In fairness, passed a dump truck last week that was flinging all
kinds of marble size rocks up. I was in no position to avoid them.
No crack until this morning though.
La
Mar 7, 2019 #369 JLUR and 04 Z06


I feel so proud to be welcomed into this auspicious club.
Just a hair less than 5k miles: tiny rock or something hit toward
the left side and it cracked right away.
Haven't even had an oil change yet and I need new glass.
Mar 9, 2019 #372 2018 JL Wrangler Rubicon

I joined the club. similar experience that many mention here. I didn't hear anything hit the windshield, just heard the glass split. had about a 3 or 4 inch run almost dead center at the top that eventually ran to about 8 inches or so. If you look very closely though there was some very small glass chipping in the area of the split, so I guess it had been hit by something at some point. Had it replaced today. I have 13000 miles on vehicle. had one previous rock chip down much lower on the glass that did not run without treatment. I do not believe mine was defrost related.

I don't remember if I had defrost on, but I was driving on the interstate and had been driving for over 30 minutes when the split happened. It was in the mid 40's and wet/rainy out. I have never replaced a windshield in my 20 years of driving except for on a rental car once. This is my first Wrangler though.

Mar 11, 2019 #375 2018 Wrangler JL Sport S

https://www.jlwranglerforums.com/forum/threads/cracked-windshield-club.5935/page-19


#3 · Nov 12, 2020
Welcome to the world of Jeep Wrangler windshield glass. I need to replace my 17 JKUR's for the 3rd time. Some people have tried Gorilla Glass for replacement, however I just go with the cheapest as Gorilla Glass will only warranty so much.
2017 JKUR

#4 · Nov 12, 2020
Welcome to the Forum, from Cave Creek AZ. I have replaced two in my 2013 JKR. My insurance covered them both, with no deductible.

#15 · Nov 13, 2020
The reviews / feedback on Gorilla glass are mixed at best. The issues we have had with the stock windshield don't seem to indicate an issue with the stock glass, but rather an issue with the angle and aerodynamics of the JK windshield. While I am considering buying a Gorilla glass windshield to replace the current cracked windshield, I really don't have overly high hopes that it will fair any better. And if it does crack, odds are they won't warranty it from what I hear.
I feel like what we need is a soft but strong coating / film to protect the windshield, something that will absorb rock hits rather than try to fight them. But the challenge is coming up with

something that can do that while staying 100% transparent, and also not pitting.
The best option for now seems to be, as mentioned, not following other vehicles so closely. Prevent the rock impacts to begin with.
2016 JKU

#18 · Nov 17, 2020
I have been through 11 windshields. 8 of them happened within 6-8 months of owning my JK and were a week or 2 between each. Both Safelite and the dealer had replaced the windshields, dealer opened a STAR case. The cracks were caused by a defect in the windshield frame which Chrysler finally replaced under warranty. The last 3 were 1) a truck/rock on the highway, 2) Hard body twisting, very off camber in a mud hole, cracking the windshield and 3) Impact with a tree branch while off road.

I have always insisted in OEM glass and in NC, there is no deductible with full comprehensive.
02WJ, 12JK, 17WK2

https://www.wranglerforum.com/threads/jeep-windshield-cracks.2414779/

98.  All of these sources of information establish that FCA knew, or reasonably should have known, of the problems concerning the Windshield Defect, the costs associated with the necessary repairs, and how the defective condition affects its consumers at the time when Plaintiffs and the class members purchased or leased their Class Vehicles.

99.  FCA had exclusive knowledge of and/or concealed material information about the Windshield Defect and failed to disclose the it to Plaintiffs and other class members in any pre-sale materials and during any service visits—the time at which Plaintiffs and other class members could have acted. FCA concealed the truth about the existence and nature of the Windshield Defect

39

from Plaintiffs and other class members at all times, even though FCA knew about the Defect and knew that information about the Windshield Defect would be important to a reasonable consumer.

100. FCA, like all automakers, is under a duty to disclose a known defect in a vehicle when there are safety concerns associated with the vehicle's use — *i.e.*, where the failure to disclose implicates a safety issue. Manufacturers may be held liable for their failure to disclose a defect when such an omission pertains to a safety issue. In this case, as stated above, FCA knew about the Windshield Defect, and that it could pose a physical threat to Plaintiffs' own safety or the safety of others. Nevertheless, FCA failed to disclose the Windshield Defect to all owners or lessees of the Class Vehicles.

101. Despite all of the foregoing, FCA has refused to address and rectify the Windshield Defect, and has failed and refused to reimburse its customers for the monies they were forced to expend, and are continually forced to expend, as a direct and proximate result of the Windshield Defect. FCA has failed to implement a plan to address the Windshield Defect, and has instead manufactured, warranted, advertised, promoted, marketed, distributed, sold and leased subsequent models that contain the same or substantially similar Windshield Defect, which they actively and intentionally concealed.

102. Class members were without access to the information concealed by FCA as described herein, and therefore reasonably relied on FCA's representations and warranties regarding the quality, durability, and other material characteristics of the Class Vehicles. Had these buyers and lessees not been purposely deceived by FCA regarding their vehicles and the known defects within them, Plaintiffs and the other members of the Class would have paid less for their vehicles than the amounts they actually paid or would not have purchased or leased the vehicles at all.

C.  **FCA's Warranty**

103. FCA's Basic Limited Warranty lasts for 36 months from the date it begins or 36,000 miles on the odometer, whichever occurs first. However, FCA limits the warranty on the windshield for only 12 months or 12,000 miles. Moreover, FCA explicitly excludes what it refers to as "Environmental Factors" and provides, in relevant part: "Your warranties do not cover conditions resulting from anything impacting the vehicle. This includes cracks and chips in glass, scratches and chips in painted surfaces, or damage from collision." Consequently, Plaintiffs and the Class members are deprived of any viable remedy for their broken windshields and must repeatedly pay out-of-pocket for replacement windshields, while facing serious and potentially life-threatening injury or death resulting from the Windshield Defect.

## VII. CLASS ACTION ALLEGATIONS

104. Plaintiffs bring this action on behalf of themselves, and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclass (collectively, the "Classes"):

### The Nationwide Class

All persons or entities residing in the Unites States who own, lease or have owned or leased a Jeep Wrangler or Gladiator containing the Windshield Defect.

### The New Jersey Subclass

All persons or entities residing in New Jersey who own, lease or have owned or leased a Jeep Wrangler or Gladiator containing the Windshield Defect.

### The North Carolina Subclass

All persons or entities residing in North Carolina who own, lease or have owned or leased a Jeep Wrangler or Gladiator containing the Windshield Defect.

### The Florida Subclass

All persons or entities residing in Florida who own, lease or have owned or lease a Jeep Wrangler or Gladiator containing the Windshield Defect.

### The California Subclass

All persons or entities residing in California who own, lease or have owned or lease a Jeep Wrangler or Gladiator containing the Windshield Defect.

### The Utah Subclass

All persons or entities residing in Utah who own, lease or have owned or lease a Jeep Wrangler or Gladiator containing the Windshield Defect.

### The Washington Subclass

All persons or entities residing in Washington who own, lease or have owned or lease a Jeep Wrangler or Gladiator containing the Windshield Defect.

### Excluded from all Classes

Excluded from the Classes are: (a) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors that purchased the Class Vehicles; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) individuals insofar as they are asserting claims for personal injury, wrongful death and/or emotional distress.

105. <u>Numerosity/Impracticability of Joinder</u>: The members of the Class are so numerous that joinder of all members would be impracticable. The Class is believed to include tens of thousands of members. The Class is composed of an easily ascertainable, self-

identifying set of individuals and entities that own, lease or owned and leased the Class Vehicles. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody, and control.

106. <u>Commonality and Predominance</u>: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the Class Vehicles suffer from the Windshield Defect;

b. Whether FCA knew, or reasonably should have known, that the Class Vehicles were defectively designed, manufactured, marketed, distributed, advertised, warranted, sold, leased, and serviced;

c. Whether FCA knew or reasonably should have known of the Windshield Defect before it sold and leased the Class Vehicles to Plaintiffs and the other members of the Class;

d. Whether FCA had a duty to disclose the Windshield Defect to Plaintiffs and the other members of the Class;

e. Whether FCA actively and intentionally concealed, failed to disclose and/or omitted material information in its marketing, advertising, sale and lease of the Class Vehicles concerning the existence of the Windshield Defect;

f. Whether FCA actively and intentionally concealed, failed to disclose and/or omitted material information when repairing the Class Vehicles concerning the existence of the Windshield Defect;

g. Whether FCA should be declared financially responsible for notifying all members of the Class of the Windshield Defect in the Class Vehicles, and for the costs and expenses of repairing the Windshield Defect;

    h. **Whether FCA violated the consumer protection laws in the New Jersey Consumer Fraud Act (hereinafter, the "CFA"), N.J.S.A. 56:8-1, et seq., and/or the consumer protection laws of the other states involving Subclass members.**

    i. **Whether FCA's conduct violates warranty laws, and other laws as asserted herein;**

    j. **Whether, as a result of FCA's omissions and concealments of material facts related to the Windshield Defect, Plaintiffs and the other members of the Class have suffered ascertainable losses, and whether Plaintiffs and the other members of the Class are entitled to monetary damages and/or other remedies, and if so the nature of any such relief;**

    k. **Whether Plaintiffs and the other members of the Class are entitled to recover the diminution in value caused by the Windshield Defect;**

    l. **Whether FCA's acts and/or omissions entitle Plaintiffs and the other members of the Class to treble damages, attorneys' fees, prejudgment interest and cost of suit.**

107. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the other members of the Class have suffered similar injury by the same wrongful practices by FCA. The claims of Plaintiffs and the other members of the Class all arise from the same wrongful practices and course of conduct, and are based on the same legal and remedial theories.

108. **Adequacy Of Representation**: Plaintiffs will fully and adequately assert and protect the interests of the members of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the members of the Class.

109. **Superiority Of Class Action And Impracticability Of Individual Actions**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the members of the Class are in the millions of dollars, and are no less than five million dollars, upon information and belief, the individual damages incurred by each member of the Class resulting from FCA's wrongful course of conduct are too small to warrant the expense of individual suits. The likelihood of individual members of the Class prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, FCA has acted or refused to act on grounds generally applicable to the members of

the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## VIII. <u>CLAIMS FOR RELIEF</u>

### <u>FIRST COUNT - OMISSION</u>

#### <u>Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2, et seq.</u>

**(By All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, By Plaintiff Reinkraut on behalf of the New Jersey Subclass)**

110. Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

111. This claim is brought on behalf of the Nationwide Class or alternatively on behalf of Reinkraut on behalf of the New Jersey Class.

112. FCA has engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing, selling and leasing of the Class Vehicles it knew to be defective.

113. FCA intentionally omitted the fact that its goods, merchandise and/or services did not have characteristics, uses, benefits, or quantities that were advertised and promoted, and failed to disclose that its goods, merchandise and/or services were not of a particular standard, quality or grade.

47

114. FCA had a duty to Plaintiffs and the Nationwide Class to disclose the defective nature of the Class Vehicles and the Defect because:

a. FCA was in a superior position to know the true state of facts about the Windshield Defect and repair costs in the Class Vehicles;

b. Plaintiffs and the Nationwide Class could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until after manifestation of the Windshield Defect;

c. FCA knew that Plaintiffs and the Nationwide Class could not reasonably have been expected to learn or discover the Windshield Defect and the associated repair costs until the manifestation of the Windshield Defect.

115. In failing to disclose the Windshield Defect and the associated risks and repair costs, FCA undertook active and ongoing steps to intentionally conceal the Windshield Defect, and has concealed, failed to disclose and/or omitted material facts from Plaintiffs and other members of the Nationwide Class and New Jersey Subclass with respect to the Windshield Defect in the Class Vehicles.

116. FCA intended that Plaintiffs and the other members of the Nationwide Class and New Jersey Subclass would rely upon its acts of concealment and/or omission by purchasing or leasing the

Class Vehicles at full price rather than paying less to purchase or lease the Class Vehicles, or purchasing or leasing other vehicles.

117. FCA's omissions were objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. The fact that FCA knew about and failed to disclose that the Windshield Defect in the Class Vehicles was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase or lease. This fact would influence a reasonable consumer's choice of action during the purchase or lease of a vehicle.

118. Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

119. As a direct and proximate result of FCA's violations of the NJCFA, Plaintiffs and the other members of the New Jersey Subclass and Nationwide Class have suffered ascertainable losses, which include but are not limited to, the monies they were forced to expend — and will have to expend in the future — to repair and/or replace their windshield, often numerous times during the life of the Class Vehicle, the diminished value of their vehicles, and the failure to receive the benefit of their purchases or leases, and accordingly were harmed by Defendant's actions in violation of the NJCFA.

## SECOND COUNT - COMMON LAW FRAUD

**(By All Plaintiffs on Behalf of Nationwide Class or,
Alternatively, on Behalf of the State Subclasses)**

120. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

121. This claim is brought on behalf of the Nationwide Class or alternatively the State Subclasses.

122. FCA consciously and intentionally concealed, failed to disclose and/or omitted a material presently existing or past fact. For example, FCA did not fully and truthfully disclose to their customers the presence of the Windshield Defect. As a result, Plaintiffs and the other members of the Nationwide Class or State Subclasses were fraudulently induced to purchase or lease Class Vehicles containing the Windshield Defect and to pay for numerous repairs to Class Vehicles containing the Defect.

123. These concealments and/or omissions were intentionally made by FCA with knowledge of their falsity, and with the intent that Plaintiffs and the other members of the Nationwide Class or State Subclasses would rely upon them.

124. Plaintiffs and the other members of the Nationwide Class or State Subclasses reasonably relied on FCA's concealments and/or omissions, and suffered damages as a result.

## THIRD COUNT - FRAUDULENT CONCEALMENT

### (By All Plaintiffs on Behalf of Nationwide Class or, Alternatively, on Behalf of the State Subclasses)

125. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

126. Plaintiffs' claims arise in part out of FCA's fraudulent concealment of the Windshield Defects. To the extent that Plaintiffs' claims arise from FCA's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. They allege that at all relevant times, including specifically at the time they purchased their Class Vehicles, FCA knew, had reason to know, or was reckless in not knowing, of the Windshield Defects; FCA was under a duty to disclose the Windshield Defects based upon its exclusive knowledge of it, its representations about its vehicles, and its concealment of the Windshield Defects; and FCA never disclosed the Windshield Defects to the Plaintiffs or anyone at any time or place or in any manner.

127. Plaintiffs make the following specific fraud allegations with as much specificity as possible given that access to all of the information necessary to establish the identity of the responsible individuals employed by FCA who concealed the Windshield Defect and precisely when FCA became aware of the

problems with the vehicles can only be obtained after Plaintiffs have the opportunity to conduct discovery as this information is exclusively in the possession of FCA. Data from computer system that serves as FCA's primary link to the dealerships, including for parts, ordering, warranty claims, filing of reports, and from Mopar's computer records using Cherwell navigation and case management for dealers enables which is exclusively within FCA's control, will enable plaintiffs to provide greater specificity in detailing the fraud allegations:

a. Who: FCA concealed the Windshield Defect from Plaintiffs, the Class, and everyone in the chain of distribution. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those individuals at FCA responsible for such decisions.

b. What: FCA knew, or had reason to know, at the time it sold the Class Vehicles, or was reckless in not knowing, the fact that existing defects in the Class Vehicles would have windshields that with little or no impact would chip, crack and fracture prior to the end of their expected useful lives, within or outside the applicable warranty periods. FCA should have known this information due to the significant number of complaints posted online and on the NHTSA website, from before the named plaintiffs purchased their Class

Vehicles, as well as from its own warranty records and telephone calls received by FCA's customer service.

c. When: FCA has concealed this material information at all times with respect to the Class Vehicles including before the time of sale, on an ongoing basis, and continuing to this day.

d. Where: FCA concealed this material information in every communication it had with Plaintiffs, the Class, and everyone in the chain of distribution. Plaintiffs are aware of no document, communication, or other place or thing, in which FCA disclosed this material information to anyone outside of the company. Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, no Monroney sticker nor on FCA's website.

e. How: FCA concealed this material information by not disclosing it to Plaintiffs, the Class, or anyone in the chain of distribution at any time or place or in any manner, even though it knew, or should have known this information due to the significant number of complaints posted on online, on the NHTSA website, and on public Jeep forums monitored by FCA from before the named plaintiffs purchased their Class Vehicles, as well as from its own records and parts replacements. FCA knew that it would be important to a reasonable consumer, and even though its omissions with

regard to the Windshield Defects were contrary to its representations about the Class Vehicles.

f. Why: FCA concealed this material information for the purpose of inducing Plaintiffs and Class members to purchase the Class Vehicles at full price rather than purchasing competitors' vehicles or paying less for the Jeeps given the likelihood that the windshields would need to be replaced, perhaps multiple times during the life of the Class Vehicles. Had FCA disclosed the truth, Plaintiffs (and reasonable consumers) would not have bought the Class Vehicles, or would have paid less for them.

<u>**FOURTH COUNT – BREACH OF EXPRESS WARRANTY**</u>

**(By All Plaintiffs on Behalf of Nationwide Class or, Alternatively, on Behalf of the State Subclasses)**

128. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

129. This claim is brought on behalf of the Nationwide Class of alternatively on behalf of the State Subclasses.

130. FCA provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain.

131. Accordingly, FCA warranties are express under state law.

132. The components that must be repaired and/or replaced as a result of the Windshield Defect, as well as the other damages caused as a result of the Windshield Defect, as described herein, are covered by the express warranties FCA provided all purchasers and lessors of the Class Vehicles.

133. Plaintiffs and the other members of the Nationwide Class have complied with all obligations and requirements under the Class Vehicles' express warranties or are otherwise excused from performance of said obligations and requirements.

134. FCA breached these warranties by selling and leasing Class Vehicles which they knew, or reasonably should have known, contained the Windshield Defect and required repair or replacement within and outside the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods or after the warranty expired, which is when the Windshield Defect typically manifested.

135. Plaintiffs notified FCA of the breach within a reasonable time, and/or was not required to do so because affording FCA a reasonable opportunity to cure its breach of written warranty would have been futile. FCA also knew of the Windshield Defect and yet chose to conceal it and to not comply with their warranty obligations.

136. As a direct and proximate result of FCA's breach of the Class Vehicles' express warranties, Plaintiffs and the other members of the Nationwide Class were damaged by, among other things, being forced to expend monies — and will continue to be forced to expend monies — to repair and/or replace their vehicles' components, and diminution in value of their vehicles.

137. FCA's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, FCA's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the Windshield Defect and in most instances the Windshield Defect does not manifest itself until after the express warranty expires.

138. The time limits contained in FCA's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Nationwide Class. Among other things, Plaintiffs and the other members of the Nationwide Class had no meaningful choice in determining these time limitations the terms of which unreasonably favored FCA. A gross disparity in bargaining power existed between FCA and Plaintiffs and the Nationwide Class, and FCA knew or should have known that the Class Vehicles were defective at the time of sale and that the windshields would fail well before their useful lives. Moreover, given the short period of the warranty and the exclusions for Environmental Conditions

which the purchaser will not see until they purchase the vehicle and review the materials provided when the purchase is complete, the warranty is unconscionable.

139. Plaintiffs and members of the Nationwide Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of FCA's conduct described herein.

## FIFTH COUNT - BREACH OF IMPLIED WARRANTY

**(By All Plaintiffs on Behalf of Nationwide Class or, Alternatively, on Behalf of the State Subclasses)**

140. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

141. This claim is brought on behalf of the Nationwide Class or alternatively on behalf of the State Subclasses.

142. FCA was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. FCA knew, or reasonably should have known, of the specific use for which the Class Vehicles were purchased or leased.

143. FCA provided Plaintiffs and the other members of the Nationwide Class with an implied warranty of merchantability that the Class Vehicles, and any components thereof, are merchantable and fit for the ordinary purposes for which they were sold or leased.

144. FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty of merchantability included, among other things: (i) a warranty that the Class Vehicles, and parts required for safe operation, including the windshields, were manufactured, supplied, distributed, sold and/or leased by FCA were safe and reliable for providing transportation, and would not experience cracking, fracturing, or chipping without any impact or with extremely slight impact while being driven or event when parked in the garage. and (ii) a warranty that the Class Vehicles would be fit for their intended use while the vehicles were being operated.

145. Contrary to the applicable implied warranties of merchantability, the Class Vehicles were not fit for their ordinary and intended purpose of providing Plaintiffs and the other members of the Nationwide Class with reliable, durable, and safe transportation.

146. Defendant breached the Class Vehicles' implied warranty of merchantability by selling or leasing Plaintiffs and the other members of the Nationwide Class vehicles, and/or components thereof, that are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from the Windshield Defect at the time of sale or lease rendering the Class Vehicles unfit for their particular purpose of providing safe and reliable transportation.

## SIXTH COUNT

### (Breach of Written Warranty Under the
### Magnuson-Moss Warranty Act, 15 U.S.C. § 230 *et seq.*)

**(By All Plaintiffs on Behalf of the Nationwide Class)**

147. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

148. This claim is brought on behalf of the Nationwide Class.

149. Plaintiffs and other members of the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

150. FCA is a "supplier[]" and "warrantor[]" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

151. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

152. FCA's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

153. FCA breached the express warranty by selling and leasing vehicles which they knew, or reasonably should have known, contained the Defect and required repair or replacement within the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods.

154. FCA's breach of the express warranty deprived the Plaintiffs and the other members of the Nationwide Class of the benefits of their bargain.

155. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

156. FCA has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiffs and other members of the Nationwide Class brought their Class Vehicles in for diagnoses and repair of the Windshield Defect.

157. As a direct and proximate result of FCA's breach of written warranty, Plaintiffs and other members of the Nationwide Class sustained damages and other losses in an amount to be determined at trial. FCA's conduct damaged Plaintiffs and other members of the Nationwide Class who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## SEVENTH COUNT – UNJUST ENRICHMENT

**(By All Plaintiffs on Behalf of the Nationwide Class or State Subclasses)**

158. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

159. The warranty had value which Plaintiffs paid, and for which Defendants agreed to render services of repair and replace.

160. The Defendant breached its implied and express warranties in that Class Vehicles were defective with respect to class vehicles windshields as to workmanship, and manufacture. The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of faulty materials being used, workmanship and defects in manufacture and design.

161. The Defendant intentionally, negligently and recklessly and/or fraudulently misrepresented the true characteristics of the Class Vehicles purchased or leased to proposed class representative and class members.

162. The Defendant benefited financially from its breaches of warranty, misrepresentations and fraud as described in this Complaint. The Defendant denied legitimate class vehicle warranty claims and obtained further unwarranted financial gain.

163. Plaintiffs and the Class sustained monetary damages as described above.

164. It would be unjust and inequitable to allow Defendant to retain its monetary enrichment from its wrongful and unlawful acts.

165. The Plaintiffs and Class request that the Defendant disgorge profits from its wrongful and unlawful conduct and the Court establish a constructive trust funded by the benefits conferred upon the Defendant as result of its wrongful conduct. The Plaintiffs and Class should be designated beneficiaries of the trust and obtain restitution for out-of-pocket expenses caused by the Defendant's conduct.

**EIGHTH COUNT – NEGLIGENT MISREPRESENTATION**

**(On Behalf of the Nationwide Class or, Alternatively, the New Jersey and State Subclasses)**

166. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

167. The Defendant negligently and recklessly misrepresented to proposed class representatives and proposed class members the characteristics of class vehicles with respect to materials, workmanship, design and manufacture, including that the windshields were adequately constructed.

168.  The proposed class representatives and proposed class members reasonably and justifiably relied upon representations made by the Defendant.

169.  As a proximate and direct result of proposed class representatives and proposed class members' reliance on the defendants' negligent and reckless misrepresentations, proposed class representatives and proposed class members sustained monetary damages as described in this complaint.

170.  Wherefore, proposed class representatives and proposed class members demand judgment against Defendant for multiple damages, interest, costs and attorneys' fees.

## NINTH COUNT

### (Violation of the North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*)

*(By Plaintiff Smith on behalf of himself and the North Carolina Subclass)*

171.  Plaintiff, Smith, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

172.  Plaintiff brings this claim individually and on behalf of the North Carolina Subclass.

173.  Defendant sold Class Vehicles, which were manufactured or assembled with the Windshield Defect, to Plaintiff and the North Carolina subclass with knowledge that the Class Vehicles were defective.

174.   The defects in FCA's Class Vehicles were latent and not discoverable by reasonably diligent consumers.

175.   Despite its knowledge of the defects, Defendant FCA failed to disclose the existence of the defects to Plaintiff and the Class.

176.   Despite its knowledge of the defects, Defendant FCA continued to sell its Class Vehicles with the Windshield Defect to consumers subject to unconscionably limited express and implied warranties.

177.   Defendant FCA's conduct as described herein was deceptive and unfair to consumers. Defendant FCA's failure to disclose the Windshield Defect to consumers and its after-the-fact interpretation of its warranties had the capacity and tendency to deceive. Defendant FCA's failure to disclose-and its attempts to conceal-the defects to consumers was immoral, unethical, unscrupulous and substantially injurious to consumers. *See Walker v. Fleetwood Homes of N.C.,* 627 S.E.2d 629, 631-32 (N.C. Ct. App. 2006).

178.   Defendant FCA's knowingly deceptive and unfair conduct constitutes a breach of warranty with substantial aggravating circumstances under the North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* See *Walker,* 627 S.E.2d at 632.

179. As a direct and proximate result of FCA's violation of the Unfair or Deceptive Trade Practices Act, Plaintiff and the North Carolina subclass have suffered damages.

### TENTH COUNT

### Violation Of Florida Deceptive And Unfair Trade Practices Act ("FDUTPA") Fla. Stat. §§ 501.201 *Et Seq.*

*(By Plaintiffs Chapman and Magee on behalf of themselves and the Florida Subclass)*

180. Plaintiffs, Chapman and Magee, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

181. Plaintiffs Chapman and Magee bring this claim individually and on behalf of the Florida subclass.

182. The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

183. Chapman, Magee and members of the Florida subclass are "consumers" and "interested parties or persons" under the FDUTPA. Fla. Stat. § 501.203(6) and (7).

184. Defendant is engaged in the conduct of "trade or commerce" as defined by the FDUTPA. Fla. Stat. § 501.203(8).

185. One of the primary purposes of the FDUTPA is to "protect the consuming public" from "those who engage in unfair methods of

competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

186. Defendant committed unfair or deceptive acts or practices, affirmative misrepresentations, material omissions and/or otherwise violated the FDUTPA. Defendant intentionally and knowingly misrepresented the standard, quality or grade of the Class Vehicles and intentionally and knowingly failed to disclose and concealed the Windshield Defect. Defendant's misrepresentations of the standard, quality or grade of class vehicles and failure to Windshield Defect constitute unfair acts or practices in violation of the FDUTPA because these acts offend public policy, are immoral, unethical, oppressive, or unscrupulous and/or cause substantial injury to consumers.

187. Defendant knew or should have known that the class vehicles were defective at the time of sale or lease and that the windshields would fail repeatedly during the useful life of the Class Vehicles.

188. Defendant owed a duty to disclose the Windshield Defect and its corresponding safety risk to Chapman, Magee and members of the Florida subclass because the defendant possessed superior and exclusive knowledge regarding the Windshield Defect and the risks associated with it. Rather than disclose the Windshield Defect, defendant engaged in deceptive trade practices in order to sell

additional class vehicles and wrongfully transfer the cost of repair or replacement to Chapman, Magee and members of the Florida subclass.

189.   Defendant has knowingly and willfully engaged in the unfair and deceptive trade practices.   Further, Defendant unconscionably marketed class vehicles to uninformed consumers in order to maximize profits by selling additional class vehicles containing the undisclosed latent defect and corresponding safety risk.

190.   Defendant's unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Windshield Defect were likely to mislead a reasonable consumer and misled Chapman, Magee and members of the Florida subclass. When Chapman and members of the Florida subclass purchased or leased their class vehicles, they reasonably relied on the reasonable expectation that the class vehicles' windshields would last beyond the warranty periods without need for repair or replacement under normal use and would not pose an unavoidable safety risk.

191.   Had Defendant disclosed the Windshield Defect and safety risk resulting therefrom, Chapman, Magee and members of the Florida subclass would not have purchased or leased the class vehicles, or would have paid less for their respective vehicles.

192.  Defendant's unfair and/or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Windshield Defect and corresponding safety risk are substantially injurious to consumers.  As a direct and proximate result of defendants knowing, intentional concealment of the Windshield Defect in violation of the FDUTPA, Chapman, Magee and members of the Florida subclass have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected cracking, chipping, or fracturing and actual damages in the amount of the cost to replace the windshields, and damages to be determined at trial.  Chapman, Magee and members of the Florida subclass have also suffered the ascertainable loss of the diminished value of their vehicles.

193. As a result of Defendant's FDUTPA violation, Chapman, Magee and members of the Florida subclass are entitled to, inter alia, injunctive and declaratory relief, actual damages, costs and attorneys' fees.  *See* Fla. Stat. § 501.211.

## ELEVENTH COUNT

### Violation Of the California Consumers Legal Remedies Act,Cal. Civil Code §§ 1750 *Et Seq.*

*(By Plaintiff Medina on behalf of herself and the California Subclass)*

194. Plaintiff, Medina, on behalf of herself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

195. Plaintiff Medina bring this claim individually and on behalf of the California subclass.

196. Plaintiff seeks to enjoin Defendant's violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§1750 *et seq.*, as well as damages resulting from Defendant's violations of the CLRA.

197. At all times relevant hereto, Plaintiff and Class members were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

198. At all times relevant hereto, the Class Vehicles constituted "goods" as that term is defined in Civ. Code §1761(a).

199. At all times relevant hereto, Defendant constituted a "person" as that term is defined in Civ. Code §1761(c).

200. At all times relevant hereto, Plaintiffs' and Class members' purchases of Defendant's Class Vehicles constituted "transactions" as that term is defined in Civ. Code §1761(e).

201. At all times relevant hereto, Defendant provided "services" to Plaintiffs within the meaning of Civil Code §1761(b).

202. The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods ... are of a particular

standard, quality or grade . . . if they are of another; ...  and (9) Advertising goods ... with intent not to sell them as advertised.

203. Defendant violated Civ. Code § 1770(a) subsection (5), (7), and (9) by representing that Class Vehicles were not defective when, in fact, they had defective windshields.  The information Defendant concealed and/or did not disclose to Plaintiffs and Class members is material in that reasonable consumers expect Class Vehicles for which they paid a premium price, to function properly, and not contain windshields which break for no reason, and thus would have considered the omitted facts important in deciding whether to purchase, or whether to pay the stated price for the Class Vehicles.

204. Plaintiff  and  Class  members  would  have  behaved differently by not buying the Class Vehicles, not paying for replacement windshields, and/or paying less for the Class Vehicles had they been aware of the Defect.

205. The omissions of material facts, as alleged above, are contrary to representations actually made by Defendant. Plaintiff Medina and the California Subclass were deceived by Defendant's failure to disclose that the Class Vehicles suffered from the Windshield Defect and that FCA would not repair or replace such windshields as required under warranty.

206. Defendant was obliged to disclose the material facts because: a) Defendant had exclusive knowledge of the material facts not known to Plaintiffs and Class members, since only Defendant had access to the aggregated collected from data from its retailers, complaints from its customers, including, but not limited to, that information recorded and accessible through its warranty and customer service database(s), communications with its Dealers, and its own tests; and b) Defendant actively concealed and suppressed the material facts from Plaintiffs and Class members by not warning of the defective windshields at the time of purchase and by performing both warranty and non-warranty repairs that it knew would not cure the defect and were in fact futile.

207. Plaintiff Medina and Class members justifiably acted or relied to their detriment upon the concealment and/or non-disclosure of material facts as evidenced by their purchases of the Class Vehicles.  Had defendant disclosed the material facts about the windshields, Plaintiffs and Class members would have behaved differently by not buying the Class Vehicles or paying substantially less for them.

208. Defendant's omissions of material facts directly and proximately caused Plaintiffs' and Class member's injuries. As such, Plaintiffs did not receive the benefit of the bargain.

209. Civil Code §1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.

210. Civil code §1780(a) subsections (1) and (2) permit a court of competent jurisdiction to award damages and restitution.

211. Pursuant to Civil Code §1782(a), Plaintiffs sent Defendant notices of the particular alleged violations of Civil Code §1770 contemporaneous with the filing of this Complaint. This notice was sent to defendant's principal place of business by Certified Mail, Return Receipt Requested. Should Defendant fail to adequately respond to Plaintiff Medina's notice nor comply with the elements of Civil Code §1782(c)(1)-(4) as to Plaintiff notices, after 30 days plaintiffs will amend the complaint to seek actual and punitive damages on behalf of the themselves and the class.

212. As a result of Defendant's violations of the CLRA, Plaintiffs are entitled to an Order (1) enjoining the wrongful practices described above; (2) requiring repairs or replacement of the Defective Windshields; (3)costs; (4) attorney's fees, and (5) such other relief as the Court deems just permitted by Civil Code § 1780 (a) and (e).

## TWELFTH COUNT

### Violation Of the California Unfair Competition Law,Cal. Bus. & Prof. Code Code §§ 17200 *Et Seq*.

*(By Plaintiff Medina on behalf of herself and the California Subclass)*

213. Plaintiff, Medina, on behalf of herself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

214. Plaintiff Medina bring this claim individually and on behalf of the California subclass.

215. Plaintiff Medina bring this cause of action on behalf of herself and the California subclass, pursuant to California Business and Professions Code, §17200, *et seq*.

216. Defendant's conduct constitutes unfair business acts and/or practices because Defendant's practices have caused and are likely to cause substantial injury to Plaintiffs which injury was not reasonably avoidable by Plaintiffs in light of Defendant's exclusive knowledge of the Windshield Defect in the Class Vehicles, and is not outweighed by the acts' and practices' benefits, if any, to Plaintiffs and Class members. Such conduct is ongoing and continues to this date.

217. The injury to consumers is substantial, particularly because the Class Vehicles' windshields are defective at the time of sale and continue to be defective after repeated futile repair attempts. The Class Vehicles are worth substantially less than

Plaintiffs and Class members paid for them given the defective windshields.

218. The injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Any purported benefits to consumers are negated by the defective windshields and repeated chipping, cracking and breaking.

219. The injury to consumers is not an injury that consumers themselves could reasonably have avoided because consumers did not know about the defective windshields before they bought their Class Vehicles.

220. Defendant's acts and practices of selling Class Vehicles with defective windshields offends an established public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

221. It is unethical and oppressive to charge a premium price for a product that fails of its essential purpose of operating with a windshield intact. Further, as alleged in detail above, Defendant actually knew about the existence of defective windshields, which renders Defendant's conduct particularly deceptive, immoral, unethical, oppressive and unscrupulous.

222. Defendant's conduct also offends established public policies concerning consumer protection and class action litigation. California also has established a public policy against allowing manufacturers to escape liability for placing

defective consumer products in the stream of commerce by imposing liability on them, and subjecting them to penalties, under the implied warranty of merchantability by operation of law under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq*.

223. Defendant's acts, practices and omissions threaten an incipient violation of antitrust laws and/or consumer protection statutes, or violate the policy and spirit of one of those laws because the effect of the acts and practices are comparable to or the same as a violation of the law or otherwise significantly threaten or harm competition. Defendant's acts and practices harm competition by luring consumers to buy its Jeeps, instead of the vehicles manufactured and sold by Defendant's competitors. The free market requires the free flow of information to run effectively. Defendant's failure to disclose the material fact that the windshields are defective, impedes the free market.

224. Furthermore, FCA wrongfully gained money by making the sale of Class Vehicles to Californians, which wrongful gain should be restored to Californians that purchased Defendant's Class Vehicles.

225. Defendant's acts and practices are unlawful because they violate the Song-Beverly Act, Civil Code §§ 1790 *et seq*., the Consumer Legal Remedies Act, Civil Code 1750 *et seq*., Bus. & Prof. Code § 17500, the California Commercial Code, and the Magnuson-Moss Warranty Act ("MMWA").

     i.    Defendant violates Cal. Bus. & Prof. Code § 17500 as alleged throughout this Complaint and in the Thirteenth Count, incorporated hereto by reference.

    ii.    Defendant violates the CLRA, Cal. Civ. §§ 1750 *et seq.*, as alleged throughout this Complaint and the Eleventh Count, incorporated by reference hereto.

   iii.    Defendant violates Cal. Civ. Code §§ 1790 *et seq.*, the California Commercial Code, and the MMWA as alleged throughout this Complaint, and in the Fourteenth and Fifteenth Counts, incorporated hereto by reference.

226. Defendant's acts and practices are fraudulent in that they have deceived and/or are "likely to deceive" Plaintiffs and members of the consuming public. Defendant sold Plaintiffs and Class members Class Vehicles that are at times unusable for the purposes for which they were purchased.

227. Plaintiffs and class members relied on Defendant's unfair, unlawful, and fraudulent business acts and practices to their detriment in that they would not have purchased the Class Vehicles had FCA disclosed that the windshields would crack under ordinary use while FCA demanded and received a premium price. As alleged herein, Plaintiff Medina relied on Defendant's omissions and would not have bought the Class Vehicles had FCA disclosed the Windshield Defect.

228. Defendant's unfair, unlawful, and fraudulent business acts and practices directly and proximately caused Plaintiffs' and Class members' injuries in that but for Defendant's failure to disclose Windshield Defect, Plaintiffs and Class members would have paid less for the Class Vehicles, would have bought other less-expensive Class Vehicles, or would not have purchased the Class Vehicles at all.

229. Defendant was obliged to disclose the material facts because: a) Defendant had exclusive superior knowledge of the material facts not known to Plaintiffs and Class members, since only Defendant had access to the aggregate data from its retailers, its own research and tests, and complaints from its customers, including, but no limited to, that information it obtained and or recorded in its warranty and customer service  system and database(s); and b) Defendant actively concealed and suppressed the material facts from Plaintiffs and Class members by not warning of the defective windshields at the time of purchase; c) FCA made partial representations about the Class Vehicles performance while withholding the material fact that the Class Vehicles have defective windshields that cause chipping, cracking and breaking prevents the Class Vehicles from functioning properly and as represented.

230. Plaintiffs and Class members have suffered injury in fact and have lost money as a result of Defendant's unfair

competition in that they have overpaid for the Class Vehicles and/or by the fact that their Class Vehicles are worth less than they paid for them because of the defective windshields. Plaintiffs and Class members seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.,* plus interest, attorneys' fees, and costs.

<u>THIRTEENTH COUNT</u>

<u>Violation Of Cal. Bus. & Prof. Code Code §§ 17500 *Et Seq.*</u>

*(By Plaintiff Medina on behalf of herself and the California Subclass)*

231. Plaintiff Medina, on behalf of herself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

232. Plaintiff Medina brings this claim individually and on behalf of the California subclass.

233. Plaintiff Medina brings this cause of action on behalf of herself and the California subclass pursuant to California Business and Professions Code, §17500, *et seq*.

234. Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

235. Defendant falsely advertised the Class Vehicles by making partial representations about their performance, while omitting the material information that the windshields were defective.

78

236. FCA's false advertising through omission of material fact has deceived and is "likely to deceive" Plaintiffs and Class members.

237. Plaintiffs and Class members relied upon Defendant's false advertising to their detriment in that they would not have purchased the Class Vehicles had FCA disclosed that the windshields were defective, and therefore would have posed a safety risk and required repeated replacement.

238. Defendant's false advertising directly and proximately caused Plaintiffs' and Class members' injuries in that but for Defendant's failure to disclose that the Class Vehicles were defective Plaintiffs and Class members would not have overpaid for them, would have bought other less-expensive vehicles, or would not have bought the Class Vehicles at all.

239. Plaintiffs and Class members have suffered injury in fact and have lost money as a result of Defendant's false advertising in that they have overpaid the Class Vehicles, and/or by that fact that their Class Vehicles are worth less than they paid for them because of the need to repeatedly replace the windshields.

240. Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs seeks an order 1) requiring Defendant to immediately cease the unlawful, unfair, and or fraudulent business acts and/or practices and false and misleading advertising complained of

herein; 2) enjoining Defendant from continuing to falsely advertise the Class Vehicles; and 3) requiring Defendant to repair or replace the windshields or provide full restitution to Plaintiffs and Class members of their full retail purchase price, plus interest and attorneys' fees.

### FOURTEENTH CAUSE OF ACTION

### Breach of Express Warranty under the Song-Beverly Act, Cal. Civ. Code 1790 *et seq.*, and Cal. Comm. Code §2313

**(By Plaintiff Medina on behalf of herself and the California Subclass)**

241. Plaintiff Medina, on behalf of herself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

242. Plaintiff Medina brings this claim individually and on behalf of the California subclass.

243. Plaintiff Medina brings this cause of action on behalf of herself and the California subclass for Defendant's breach of express warranty under the laws of the State of California.

244. In connection with the sale of lease of the Class Vehicle to Medina and the California subclass, Defendant provided Medina and the subclass with a New Vehicle Limited Warranty. Under the Basic Limited Warranty, Defendant states that it "covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered

parts since the only exceptions are tires and headphones. These warranty repairs or adjustments, including all parts and labor connected with them, will be made by an authorized dealer at no charge, using new or remanufactured parts. You pay nothing for these repairs." On the next page, Defendant indicates that the Basic Limited Warranty lasts for 36 months or 36,000 miles on the odometer, whichever occurs first, although certain items are only covered for 12 months or 12,000 miles. Windshield and Rear Window are included in the 12-month limitation.

245. Plaintiff Medina and the California subclass relied upon these warranty agreements which became part of the basis for the bargain.

246. Defendant is obligated under the terms of its express Warranties to repair and/or replace the defective windshields sold to Plaintiffs, and/or to make the Class Vehicles conform to the Written Warranties under the Song-Beverly Act, Civil Code § 1793.2(b) and (d), Cal. Comm. Code § 2313.

247. Defendant breached its Written Warranties, as set forth above, by selling and supplying the Class Vehicles with defective windshields and by failing to repair them or replace them with non-defective windshields so that they conform to the warranties after a reasonable number of repair attempts.

248. To the extent any notice is deemed required, Defendant has received sufficient and timely notice of the breaches of

warranties alleged herein.  Defendant has had notice of Plaintiffs'
claims.  Despite this notice and Defendant's knowledge of the
defective windshields, Defendant has refused to honor its Written
Warranties.

249. In addition, Defendant has received thousands of
complaints and other notices from its customers throughout the
United States, which complaints notified Defendant that the
windshields on the Class Vehicles were defective.

250. Plaintiff Medina and the California subclass have
complied with their obligations under the Written Warranty and the
law and have given Defendant a reasonable opportunity to cure the
breaches of its Warranties and Defendant failed to do so.

251. Pursuant to Cal. Civ. Code § 1793.2, FCA had 30 days
within which to conform Plaintiffs' and Class member's Class
Vehicles to the express warranties, however, FCA failed to do so
and no conditions beyond its control prevented its compliance.

252. Defendant knew of its Warranty obligations to repair or
replace the defective windshields.  However, Defendant has
willfully refused to replace them when presented.  Therefore,
Defendant is liable for damages, as well as civil penalties
pursuant to Civil Code § 1794.

253. FCA's time limits on its Written Warranties are
procedurally and substantively unconscionable.  The Written
Warranties are offered on a take-it-or leave-it basis without any

input from consumers in a "boiler-plate" printed form that are oppressive and surprise consumers because FCA is in a superior bargaining position. The Written Warranties are substantially unconscionable because FCA knowingly and/or recklessly sold a defective product that was defective at the time of sale, without conspicuously informing consumers about the defects. The time limits on the Written Warranties are grossly inadequate to protect Plaintiffs and Class members. The terms of the Written Warranties unreasonably favor Defendant by unreasonably limiting the Warranty; a gross disparity in bargaining power existed as between Defendant and Plaintiffs and the Class members; Plaintiffs and Class members had no meaningful choice in determining those time limitations; and Defendant knew or should have known that the Class Vehicles had defective windshields, thereby creating overly harsh and one-sided results by leaving consumers with non-repairable windshields that FCA knew existed at the time of sale.

254. Defendant's affirmations and promises became part of the "basis of the bargains" between Plaintiffs and the Class members, on the one hand, and FCA, on the other hand. Plaintiffs and Class members would not have purchased the Class Vehicles had FCA not warranted the Class Vehicles as it did.

255. As a direct and proximate result of Defendant's breach of the Written Warranties, Plaintiffs and Class members have

sustained damages and other losses in an amount to be determined at trial.

256. Defendant has attempted more repairs than is reasonable under the circumstances given that the windshields repeatedly crack, chip and fail and cannot be fixed and has not and cannot conform the windshields to its express warranties.  Pursuant to Cal. Civ. Code § 1793.2, FCA is required to replace the windshields with conforming windshields, or reimburse Plaintiffs and Class members their purchase price. Plaintiffs are also entitled to recover costs, attorneys' fees, and other relief as the Court deems appropriate.

## FIFTEENTH COUNT

### Breach of Implied Warranty of Merchantability under the Song-Berverly Act, Cal. Civ. Code 1790 *et seq.*

(**By Plaintiff Medina on behalf of herself and the California Subclass**)

257. Plaintiff Medina, on behalf of herself and all other similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

258. Plaintiff Medina brings this claim individually and on behalf of the California subclass.

259. Plaintiff Medina brings this cause of action on behalf of herself and the California subclass for Defendant's breach of implied warranty under the laws of the State of California.

260. Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 *et seq.*, every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable within the meaning of Cal. Civ. Code § 1791.1(a). Therefore, consumers need not be in privity with the manufacturer to bring an implied warranty claim.

261. Pursuant to Cal. Civ. Code § 1793, any attempt by FCA attempt to modify the length of the implied warranty of merchantability in its Written Warranty is void.

262. The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

263. Defendant is a "manufacturer" within the meaning of Cal. Civ. Code §§ 1791(j).

264. Plaintiff Medina and the California subclass bought the Class Vehicles at retail in the State of California.

265. At the time of sale, and currently, Defendant is in the business of manufacturing, marketing, and selling Class Vehicles.

266. By operation of law, Defendant impliedly warranted to Plaintiffs and Class members that the Class Vehicles, for which Plaintiffs and Class members paid a premium price, were of merchantable quality and fit for the ordinary purposes for which they are used.

267. Defendant knowingly and/or recklessly sold a defective product without conspicuously informing consumers about the Windshield Defect.

268. Defendant breached the implied warranty of merchantability because the Class Vehicles suffer from the Windshield Defect described above, and thus were not in merchantable condition at the time of sale or lease to the California subclass, or at any time thereafter. Consequently the Class Vehicles are unfit for their ordinary purpose of providing reasonably safe and reliable transportation because driving with the Windshield Defect renders every trip in the Class Vehicles unreasonably dangerous.

269. Defendant's breach of the implied warranties, caused owners and lessees of the Class Vehicles to suffer an ascertainable loss of money, property and value to their Class Vehicles. Plaintiff Medina and the California subclass were harmed and suffered and continue to suffer actual damages.

270. Plaintiffs and the California subclass were the intended third-party beneficiaries of the contracts for sale of the Class Vehicles from FCA to the Dealers who ultimately sold the Class Vehicles to Plaintiffs and Class members.

271. Defendant's conduct of responding to warranty claims made by remote purchasers estops it from denying liability under

express and implied warranties on the basis of privity.  Defendant brought itself into privity with Plaintiffs and class members.

272. Defendant knew and intended that Plaintiffs and Class members were the ultimate beneficiaries of Defendant's implied warranties as they are the owners of the Class Vehicles.

273. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiffs and Class members have sustained damages and other losses in an amount to be determined at trial. Plaintiffs and Class members are entitled to recover damages and attorneys' fees as provided by statute, as well as costs, and other relief the Court deems appropriate.

<u>SIXTEENTH COUNT</u>

<u>Violation of the Utah Consumer Sales Practices Act UTAH CODE ANN §13-11-1 et seq.</u>

(By Plaintiff Zaugg on his own behalf and on behalf of the Utah Subclass)

274. Plaintiff Zaugg, on behalf of himself and all others similarly situated, incorporate by reference the allegations contained the preceding paragraph of this Complaint.

275. Plaintiff brings this claim individually and on behalf of the Utah Subclass.

276. Both Plaintiff Zaugg and Defendant are deemed a "person" under Utah Code Ann. §13-11-3(5).

277. FCA is, by definition, a "supplier" under Utah Code Ann. §13-11-3(6) because FCA, directly or indirectly, regularly

solicits, engages in, and enforces consumer transaction in the United States, including Utah.

278. At all times relevant hereto, FCA has engaged in "consumer transactions" in accordance with Utah Code Ann. §13-11-3(2) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Utah, directly or indirectly affecting Utah citizens through trade and commerce.

279. The conduct of FCA alleged above constitutes false, misleading, or deceptive trade acts or practices in violation of Utah Code Ann. §13-11-14.

280. Defendant failed to disclose and concealed the Windshield Defect from Plaintiff Zaugg and the members of the Utah subclass in violation of the Utah Consumer Sales Practices Act because Defendant represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

281. Representing to purchases and lessees of Class Vehicles that the Jeeps were safe vehicles of study construction when the windshields were repeatedly prone to failure and needed replacement; and further representing that the windshields were warranted for 12 months or 12,000 miles when FCA routinely refused

to replace them during that time period is this equivalent of a 'bait and switch' tactic precluded under the Utah Administrative Code R152-11-3 by the enforcing authority, which entitles a Utah Plaintiff to pursue relief on behalf of a damages class.

282. Defendant's unfair and deceptive acts and practices occurred repeatedly in FCA's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public because a broken windshield presents a risk of serious injury.

283. FCA knew that the Class Vehicles suffered from the Windshield Defect, were defectively manufactured, would fail prematurely and were not suitable for use as intended.

284. Defendant had a duty to Plaintiff and the Utah subclass to disclose the defective nature of the Class Vehicles because:

- Defendant was in a superior position to know the true state of facts about the inherent problem causing the Windshield Defect;

- Plaintiff Zaugg and the Utah subclass could not reasonably have been expected to discover that their Class Vehicles had a dangerous safety defect until after purchase.

285. The failure to disclose these facts to Zaugg and the Utah subclass are facts that every reasonable person would consider important in deciding whether or not to purchase a Class Vehicle.

286. Plaintiff Zaugg and the Utah subclass relied on Defendant to disclose material information such as the Windshield Defect, and to not induce them to purchase or lease a Class Vehicle by concealing this information.

287. By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached a duty not to do so.

288. FCA's intentional concealment and failure to disclose the Windshield Defect constitutes an "unconscionable act or practice" under Utah Code Ann. §13-11-5 because Defendant's conduct took advantage of Plaintiff Zaugg and the Utah subclass members' lack of knowledge, ability and experience to a grossly unfair degree to their extreme detriment.

289. The facts concealed by Defendant are material because a reasonable consumer would have considered them important in deciding whether or not to purchase the Class Vehicles, or to pay less for it.

290. If Defendant had disclosed the Windshield Defect, Plaintiff Zaugg and the Utah subclass would not have purchased them or would have paid less for them.

291. As a result of FCA's misconduct, Plaintiff Zaugg and the Utah subclass have been harmed, and have suffered actual and economic damages as they own defective vehicles requiring repair

and replacement of windshields repeatedly and are thus worth less money because of the Defect.

292. Plaintiff Zaugg has provided adequate notice to Defendant.

293. Plaintiff Zaugg and the subclass should be awarded punitive damages because of Defendant's intentional concealment of the Windshield Defect.

294. Plaintiff Zaugg and the Utah Class are also entitled to injunctive relief to compel Defendant to offer remediation solutions without charge, through an extended warranty, compelling full disclosure of the Windshield Defect, and to provide notice to all Class Members that the warranty is extended to cover these repairs.

<u>SEVENTEENTH COUNT</u>

<u>Violation of the Washington Consumer Protection Act("WCPA")</u>
<u>Wash. Rev. Code Ann. §19.86.010 et seq.</u>

(By Plaintiff Willcutt on his own behalf and on behalf of the Washington Subclass)

295. Plaintiff Willcutt, on behalf of himself and all others similarly situated, incorporate by reference the allegations contained the preceding paragraph of this Complaint.

296. Plaintiff brings this claim individually and on behalf of the Washington Subclass.

297. FCA, Willcutt, and the other Class members are "persons" within the meaning of Wash. Rev. Code §19.86.010(2).

298. FCA is engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code §19.86.010(1).

299. The Washington Consumer Protection Act ("WCPA")provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" is unlawful. Wash. Rev. Code §19.86.020

300. As described above in detail and incorporated herein by reference, FCA engaged in unfair and deceptive acts in violation of Wash. Rev. Code §19.86.020

301. FCA's omissions and failure to disclose the Windshield Defect, described above, constitute material facts that a reasonable person would have considered in deciding whether to purchase (or pay the same price for) the Class Vehicle.

302. FCA intended for Plaintiff Wilcutt and the other Washington subclass members to rely FCA's omissions of fact regarding the Windshield Defect.

303. Plaintiff Wilcutt and the other Washington subclass members justifiably relied to their detriment upon FCA's omissions of fact, as evidenced by their purchase of the Class Vehicles.

304. Had FCA disclosed all material information regarding the Windshield Defect to Plaintiff Wilcutt and the Washington subclass members, they would not have purchased or leased the Class Vehicles or would have paid less to do so.

305. FCA's omission deceived Plaintiff Willcutt and the other Washington subclass members.

306. Additionally, the business practices of FCA were unfair because FCA knowingly sold to Plaintiff Wilcutt and the other subclass members vehicle with defective windshields which repeatedly cracked or chipped requiring costly replacements and posing a safety hazard which rendered the windshields essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the subclass are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the Washington subclass or to any competition under all the circumstances.

307. Because FCA had exclusive knowledge of the Windshield Defect, the injury is not one that Plaintiff Willcutt and the Washington subclass could have reasonably avoided.

308. Further, and to the extent required by law, FCA had a duty to disclose the Windshield Defect because disclosure ws necessary to dispel misleading impressions about the Class Vehicles' reliability and durability that were created by partial representation of the facts. Specifically, FCA promoted through advertisements available to all Subclass members, that the vehicles were reliable and durable. FCA also disclosed information on the Monroney stickers which failed to disclose the Windshield Defect, which is information material to any purchase or lessee.

309. FCA owed Plaintiff and the Washington subclass a duty to disclose all the material facts concerning the Windshield Defect because it possessed exclusive knowledge, yet it intentionally concealed the defect from Plaintiff and the subclass, and/or made representations that were rendered misleading because they were contradicted by withheld facts.

310. FCA's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff Willcutt and the other Washington subclass members, about the true reliability, dependability, and quality of the Class Vehicles.

311. FCA's violation present a continuing risk to Plaintiff and the subclass members, as well s the general public. FCA's unlawful acts and practices complained of herein affects the public interest.

312. Plaintiff Willcutt and the Washington subclass members suffered ascertainable loss and actual damages as a direct result of FCA's concealment and failure to disclose material information as to the Windshield Defect. Plaintiff and the other subclass members who purchased or leased the Class Vehicles would not have done so, or would have paid significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiff and the other subclass members also suffered diminished value of their vehicles.

313. Pursuant to Wash. Rev. Code §19.86.090, Plaintiff Willcutt and the other Washington subclass members seek an o0rder

enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, treble damages, attorneys' fees and costs, and any other just and proper relief available under the WCPA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and on behalf of the Nationwide Class, New Jersey Subclass, North Carolina Subclass, Florida Subclass, Washington Subclass and Utah Subclass prays for judgment against Defendants, FCA US LLC as follows:

1.    An Order pursuant to Fed. R. Civ. P. 23 (c) granting Certification of the proposed Nationwide Class, New Jersey Subclass, North Carolina Subclass, Florida Subclass, Washington Subclass and Utah Subclass and appointing and designating the law firm, Nagel Rice, LLP to represent the Classes as class counsel pursuant to Fed. R. Civ. P. 23(g).

2.    All recoverable compensatory, statutory and other damages sustained by Plaintiffs and the other members of the Nationwide Class, New Jersey Subclass, North Carolina Subclass, Florida Subclass, Washington Subclass and Utah Subclass.

3.    Restitution and disgorgement of all amounts obtained by FCA US, LLC as a result of its misconduct, together with interest thereon, from the date of payment, to the victims of such violations.

4. Restitution of incidental expenses incurred by proposed Class Representatives and Class Members including the cost of rental vehicles or substitute transportation.

5. Actual, treble, and/or statutory damages for injuries suffered by Plaintiffs and the other members of the Classes and Subclasses in the maximum amount permitted by applicable law.

6. An Order, among other things: (a) requiring FCA to immediately cease its wrongful conduct, as set forth above; (b) enjoining FCA from further wrongful practices concerning the distribution, advertisement, marketing, warranting, sale and lease of the Class Vehicles; (c) requiring FCA to make all repairs and/or replacements necessitated as a result of the Windshield Defect in the vehicles purchased or leased by Plaintiffs and the other members of the Nationwide Class, New Jersey Subclass, North Carolina Subclass, Florida Subclass, Washington Subclass and Utah Subclass; (d) requiring FCA to refund to Plaintiffs and all members of the Nationwide Class, New Jersey Subclass, North Carolina Subclass, Florida Subclass, Washington Subclass and Utah Subclass the funds they were forced to expend on repairs and/or replacements as a result of the Windshield Defect; (e) holding FCA liable to all members of the Nationwide Class, New Jersey Subclass, North Carolina Subclass, Florida Subclass, Washington Subclass and Utah Subclass for the diminution in value to the Class Vehicles which have not yet experienced the Defect, and (f) a declaration that

FCA is financially responsible for notifying all members of the Nationwide Class, New Jersey Subclass, North Carolina Subclass, Florida Subclass, Washington Subclass and Utah Subclass of the Windshield Defect, recalling the Class Vehicles and/or extending their warranties to cover the Windshield Defect;

7. Statutory pre-judgment and post-judgment interest on the Class damages;

8. Injunctive and declaratory relief pursuant to Fed. R. Civ. P. 23(b)(2) declaring that going forward, the Windshield Defect and all remedial or replacement necessary to correct the Windshield Defect is covered under the Warranty;

9. Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

10. Such other relief as the Court may deem just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all causes of action so triable.


DATED: June __, 2023          NAGEL RICE, LLP
                              *Attorneys for Plaintiffs and
                              the Putative Class*

                              By: <u>s/ *Bruce H. Nagel*  </u>
                                  Bruce H. Nagel
                                  Randee M. Matloff
                                  103 Eisenhower Parkway
                                  Roseland, New Jersey 07068
                                  973-618-0400
                                  bnagel@nagelrice.com
                                  rmatloff@nagelrice.com

Joseph Santoli, Esq.
340 Devon Court
Ridgewood, New Jersey 07450
201-926-9200
josephsantoli002@gmail.com